**GRINNELL MUTUAL REINSURANCE COMPANY, Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Roger A. Hartman, Mary J. Hartman, Alan Van Houten, Barb Van Houten, and Molly Van Houten, A Minor, Appellees.**

No. 96–168.

Supreme Court of Iowa.

Jan. 22, 1997.

uninsured motorist clause under the passenger's policy excluded from coverage any person using a vehicle without having sufficient reason to believe that the use was with permission.

The passenger's insurer filed this declaratory judgment action against the owners' insurer, the owners, the passenger, and the passenger's parents. The insurer sought a ruling that the passenger was covered, if at all, under the owners' policy and not under its own policy.

The district court found that the passenger was not using the vehicle within the scope of the owners' consent. The court, however, also found that the passenger had sufficient reason to believe that her use of the vehicle was with permission. The court therefore established that there was coverage under the passenger's policy but not under the owners' policy. On the appeal by the passenger's insurer, we agree with the district court and affirm.

### I. *Background Facts and Proceedings.*

The single-vehicle accident that led to this lawsuit happened on September 30, 1993. On that date Molly Van Houten was a passenger in a 1987 Chevrolet pickup, and Brenda Stapleton was driving. Brenda lost control of the pickup on a county road and both girls were injured in the resulting accident. At the time of the accident, Brenda had no automobile liability insurance.

Title to the pickup was in the name of Roger A. and Mary J. Hartman (Hartmans). The couple had purchased the pickup primarily for use by their son, Brian. Brian had provided part of the money toward the purchase price of the pickup.

The Hartmans permitted Brian to drive the pickup on a regular basis. On several occasions, however, they gave Brian specific instructions that he was not to permit anyone else to drive the pickup.

At the time of the accident, Brian was a senior and Molly was a sophomore at the same high school. Molly had been Brian's girlfriend for about a year before the accident. On many occasions she had ridden as

Theodore T. Duffield of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, L.L.P., Des Moines, for appellant.

William Kevin Stoos of Klass, Hanks, Stoos, Stoik, Mugan, Villone & Phillips, L.L.P., Sioux City, for appellees State Farm and Hartman.

A. Eric Neu of Neu, Minnich, Comito & Hall, P.C., Carroll, for appellees Van Houten.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

LAVORATO, Justice.

In this case, a passenger was injured in a single-vehicle accident. The driver was uninsured. The owners of the vehicle had a policy with uninsured motorist coverage. The passenger was an insured under her parents' policy which also had uninsured motorist coverage. The omnibus uninsured motorist clause under the owners' policy provided that the vehicle had to be used within the scope of the owners' consent. The omnibus

a passenger in the pickup with Brian as the driver. The Hartmans had no objection to Molly's riding in the pickup when Brian was driving it.

Contrary to his parents' instructions, Brian had permitted Molly to drive the pickup several times before the accident. The Hartmans, however, were unaware that Molly had driven the pickup.

On the morning of the accident, Molly rode to school with Brenda rather than with Brian because Molly was running late. When she arrived at school, Molly discovered she had left some items at home and needed to return to retrieve them. Molly went to Brian and asked him to drive her home because Brenda's car was low on gas. Brian told her he could not do so until later. Molly then asked to use the pickup. Without any comment, Brian threw her the keys. He assumed that Molly would be driving.

Later and out of Brian's presence, Brenda asked Molly if she could drive. Molly gave the keys to Brenda and they left with Brenda driving the pickup.

At the time of the accident, the pickup was covered by an insurance policy issued to Roger A. Hartman by State Farm Mutual Automobile Insurance Company (State Farm). The policy included uninsured motorist coverage.

Molly's parents, Alan and Barb Van Houten, also had a policy that included uninsured motorist coverage. This policy was in force at the time of the accident. The policy had been issued by Grinnell Mutual Reinsurance Company (Grinnell).

Grinnell filed a declaratory judgment action, naming as defendants State Farm, the Hartmans, the Van Houtens, and Molly (as a minor). The petition asked the court to rule that the State Farm policy provided uninsured motorist coverage to Molly and her parents for Molly's injuries. In the alternative, the petition asked that neither State Farm's policy nor Grinnell's policy provided such coverage.

The parties tried the case to the district court. The court ruled that Molly was not an insured person under the Hartmans' policy with State Farm. Neither she nor her parents could therefore recover any damages from State Farm under the uninsured motorist provision of the State Farm policy.

The court also ruled that Molly and her parents were insured persons under the Van Houtens' policy with Grinnell. She and her parents could therefore recover damages for Molly's injuries from Grinnell under the uninsured motorist provision of the Grinnell policy.

Grinnell appealed, challenging the coverage rulings as to both policies.

## II. Scope of Review.

The case was filed as a declaratory judgment action under Iowa Rule of Civil Procedure 261. Nevertheless, we review it as any other judgment. Iowa R. Civ. P. 267; *Grinnell Mut. Rein. Co. v. Voeltz*, 431 N.W.2d 783, 785 (Iowa 1988). How the parties tried the case in the district court governs our scope of review. *Voeltz*, 431 N.W.2d at 785. Because the parties tried this case at law, our review is for error. *Id.*

The district court's findings, therefore, have the effect of a jury verdict and are binding on us if supported by substantial evidence. *Id.* Evidence is substantial if a reasonable mind would accept it as adequate to reach the same findings. *Id.*

## III. The Coverage Issue.

■ Whether the district court correctly decided the coverage issue depends upon its interpretation of the omnibus uninsured motorist clause of both policies. An "omnibus clause" of an automobile liability insurance policy extends "the coverage of the policy to any person using or responsible for the use of the insured vehicle, provided the actual use is with the permission of the named insured." Jay M. Zitter, Annotation, *Omnibus Clause as Extending Automobile Liability Coverage to Third Person Using Car with Consent of Permittee of Named Insured,* 21 A.L.R.4th 1146, 1153 (1983).

A number of courts have considered whether coverage extends to a third party, commonly known as a second permittee, who was driving with the express permission of a

named insured's permittee. In their analysis of this issue,

the courts have generally given effect to the requirement in the clause that the use of the automobile must be with the consent or permission of the named insured, and the controlling question involved usually has been whether the initial permission included either authority to the first permittee to allow the second permittee to so operate or use the vehicle, or the named insured's permission to the subpermittee to do so. In resolving that issue the nature and scope of the initial permission, whether delegation by the first permittee was expressly authorized or prohibited, the relationship and conduct of the parties, and the attending circumstances generally, have been regarded as material and sometimes decisive factors.

*Id.*

A. *State Farm's Policy.* The omnibus uninsured motorist clause in State Farm's policy provided:

Who Is an Insured

Insured—means the **person** or **persons** covered by uninsured motor vehicle or underinsured motor vehicle coverage:

This is:

1. the first **person** named in the declaration;

2. his or her spouse;

3. their **relatives**; and

4. any other **person** while occupying:

 a. **your car**, a **temporary substitute car**, a **newly acquired car** or a trailer attached to such **car**. Such vehicle has to be used within the scope of the consent of **you** or **your spouse**. . . .

The district court properly focused on paragraph four as the relevant provision and framed the issue this way: whether the pickup was being used within the scope of the Hartmans' consent at the time of the accident. Finding that the pickup was not being used within the scope of the Hartmans' consent, the court reasoned:

It is clear in this case that Molly would not have been an insured under the uninsured motor vehicle coverage of the State Farm Policy if she had been driving the

pickup at the time of the accident. Her driving the pickup would have been directly contrary to the instructions given by [the Hartmans] to Brian.

[Grinnell] contends that Molly was an insured under the State Farm policy because she let Brenda drive the pickup rather than driving it herself. That contention does not constitute a reasonable interpretation of the policy, and it is contrary to the facts in this case. [The Hartmans] did not consent to Molly's driving the pickup, and they did not consent to Molly's riding in the pickup while permitting it to be driven by Brenda.

An insurance policy must be given the reasonable interpretation which is most favorable to the insured, but the court may not adopt a strained or unreasonable interpretation in order to create coverage when the policy provides none.

To hold that the pickup was being used within the scope of [the Hartmans'] consent at the time of the accident in this case would be to engage in fantasy rather than to make a reasonable interpretation of the policy. The pickup was not being used within the scope of consent by either Molly or Brenda. Molly was therefore not an insured under the State Farm policy.

(Citation omitted.)

 As it did in the district court, Grinnell contends here that Molly was a consent user of the pickup and therefore an insured under the uninsured omnibus clause of State Farm's policy. In support of its contention, Grinnell argues that Molly frequently rode in the pickup as a passenger without any objection from the Hartmans. Grinnell further argues that because Molly was a passenger rather than the driver at the time of the accident, she was using the pickup within the scope of the Hartmans' consent. Grinnell concludes that Brenda's driving without the Hartmans' consent did not deprive Molly of her status as a consent user of the pickup.

Grinnell's argument is premised on an alleged difference in meaning between the term "use" and "operate" for purposes of omnibus coverage. There is some authority for making such a distinction. *See, e.g., In-*

*demnity Ins. Co. of N. Am. v. Metropolitan Cas. Ins. Co.*, 33 N.J. 507, 166 A.2d 355 (1960).

In *Indemnity,* an automobile owner permitted her employee to take a group of customers in her car for a tour of a brewery as part of a sales-promotion program. The owner had on past occasions told the employee that only the employee was to operate the car. On the way back from the tour, the employee permitted one of the customers to drive while the employee sat in the front passenger seat. The car left the highway and struck a tree, killing the driver and the employee and injuring the other occupants of the car. Holding that the driver's estate was an insured under the omnibus clause of the owner's policy, the court reasoned:

> Under the omnibus clause of its insurance contract, [the insurer] agreed to cover "any person while using the automobile . . . provided the actual use is with . . . (the named Insured's) permission." The clause says nothing about Operation of the vehicle. It is the Use which must be permitted. [The insurer] reads the word Use as synonymous with Operation, and argues that since [the owner] in effect expressly forbade [the customer-driver] from Operating her car, [the customer-driver] was not covered. We think that in this context the words Use and Operation are not synonymous. The Use of an automobile denotes its employment for some purpose of the user; the word "operation" denotes the manipulation of the car's controls in order to propel it as a vehicle. Use is thus broader than Operation. One who operates a car uses it, but one can use a car without operating it. An automobile is being used, for example, by one riding in it although another is driving.

> Since in this context the words Operation and Use have different meanings and the omnibus clause requires only that the Use of the automobile be with the permission of the named insured, any prohibition as to the Operation of the automobile is immaterial to a determination of coverage. Thus, even though a driver has been expressly prohibited from Operating the car,

he is covered if the car was being Used for a purpose permitted by the named insured.

> . . . .

> It is undisputed in the present case that [the owner] gave [the employee and the customers] permission to Use her automobile to go to and from [the brewery]. At the time of the accident the automobile was being Used for that purpose, i.e., transporting the members of the party from the brewery to their homes. Since under the terms of the omnibus clause in [the] policy a person is an additional insured if he is Using the automobile with the named insured's permission, we hold that [the customer-driver] was an additional insured.

*Indemnity,* 33 N.J. at 513–14, 515, 166 A.2d at 358, 359.

The "use" versus "operation" theory of *Indemnity* was specifically rejected in *Helwig v. Esterly,* 205 Pa.Super. 185, 189–90, 208 A.2d 10, 12 (1965). In *Helwig,* the omnibus clause covered any person while using the automobile "provided the actual use is by the named insured or [the insured's] spouse or with the permission of either." *Helwig,* 205 Pa.Super. at 187, 208 A.2d at 10. The named insured in *Helwig* gave his son permission to use his car. However, the father imposed a restriction that no one else was to drive the car. The father specifically instructed the son not to let his fiancee drive because she only had a learner's permit. Contrary to these instructions, the son permitted his fiancee to drive the car while the son was a passenger. The fiancee was in an accident.

In *Helwig* the appellate court determined the omnibus provision of the father's policy did not cover the son's fiancee. In doing so the court rejected the argument that the fiancee was merely the operator while the actual use of the car was being made by the owner's son with the owner's permission.

> It would be unreasonable to hold that [the son] was privileged to disregard the explicit instruction of his father as to the manner in which he was to use his father's car. This is consistent with what was said [in an earlier case] ". . . the word 'permission' is to be construed as meaning permission to use the car, or permission to use the car in

a specified manner and for a specified purpose."

If the restriction were imposed in this case the action of [the son] in using the automobile with [the fiancee] as the driver would be a major, not a slight, deviation from the privilege granted to him, whether it be considered as a breach of the condition imposed upon his privilege of use, thereby terminating that privilege, or as a use not intended, i.e., the use of the car to give [the son's fiancee] an opportunity to practice driving or to receive instruction. Either would be beyond the privilege granted to him. Therefore, [the fiancee] would have been operating the car without the permission of the named insured and would not be covered by the policy. She would have no express privilege granted to her by the named insured or implied by his conduct and she could not acquire an implied permission through [the son] since his privilege of use ended with his turning over the wheel of the car to her contrary to the express instruction given by his father.

*Id.* at 190, 208 A.2d at 12 (citations omitted).

The omnibus uninsured motorist clause in State Farm's policy is similar to the omnibus clauses in *Indemnity* and *Helwig.* State Farm's omnibus uninsured motorist clause provides that a person while occupying the pickup is an additional insured if the pickup is "used within the scope of the consent of" the Hartmans. As between the interpretations of the omnibus clauses in *Indemnity* and in *Helwig,* we think the interpretation in *Helwig* is more reasonable and sound. We therefore adopt it.

Applying that interpretation here, we think there was substantial evidence to support the district court's finding that Molly was not using the pickup within the scope of the Hartmans' consent. She was therefore not an insured and was not covered under the omnibus uninsured motorist clause of State Farm's policy. The evidence is uncontroverted that the Hartmans explicitly told Brian no one else was to drive the pickup. The Hartmans knew that Molly was a frequent passenger in the pickup *when* Brian was driving. They said nothing, and therefore impliedly consented to Molly's passenger status only when Brian was driving. However, once Brian tossed the keys to Molly and she permitted Brenda to drive, any privilege Brian had to use the pickup terminated.

In addition, the use—Brenda driving Molly home—was not an intended use of the pickup. On this point the evidence is also uncontroverted. Brian's father testified that he would have been shocked and would not have consented to such use had he known about it. Such use was beyond the privilege the Hartmans gave Brian and therefore not within the scope of the Hartmans' consent.

B. *Grinnell's policy.* The omnibus uninsured motorist clause in Grinnell's policy was different from that in State Farm's policy. The Grinnell omnibus uninsured motorist clause provided:

(1) **"Insured person"** means:

(a) **You** or a **relative.**

(b) Any other person **occupying your insured car.**

(c) Any person for damages that person is entitled to recover because of **bodily injury** to **you**, a **relative**, or another occupant of **your insured car.**

However, no person shall be considered an **insured person** if the person uses a vehicle without having sufficient reason to believe that the use is with permission.

On the coverage issue under this provision, the district court framed the issue this way: "whether Molly had sufficient reason to believe that her use of the pickup was with permission."

On this issue the court found:

At the time of the accident Molly knew that Brian used the pickup on a regular basis. Brian had told her that he was making payments on the pickup.

No one had told Molly that the pickup was owned by [the Hartmans]. Molly did not know that Brian was the only person who had permission to drive the pickup.

Molly believed that the pickup was owned by Brian.

Brian had never told Molly that she was not to let anyone else drive the pickup.

Nothing was said about who was to drive the pickup on the day of the accident. Molly thought that she had general permission to use the pickup to go to her home and that she was free to let Brenda drive the pickup.

[Grinnell's] policy required only that Molly have sufficient reason to believe that her use of the pickup was with permission. It did not require that her belief be based on actions or statements of the persons who actually owned the vehicle. A belief resulting from a misapprehension of the facts was sufficient if it was reasonable under all of the circumstances.

Molly had sufficient reason to believe that her use of the pickup at the time of the accident was with the permission of the pickup's owner. That fact did not make her an insured under the State Farm policy. It did, however, make her an insured under the policy issued by [Grinnell].

Grinnell challenges the district court's determination of coverage on the ground that there was not substantial evidence to support the court's finding that Molly reasonably believed she had Brian's permission to let Brenda drive. Grinnell asserts that Brian's initial grant of authority to Molly was not broad enough to include an implied consent for Molly to give Brenda permission to drive the pickup.

Consent to use an automobile may be either express or implied from the circumstances. *Farm & City Ins. Co. v. Gilmore,* 539 N.W.2d 154, 159 (Iowa 1995). The issue of implied consent is a fact question if broad, unrestricted consent is given to the first permittee. *Id.*

In *Gilmore,* the first permittee was driving the owner's car with the owner's knowledge and consent. The owner had given the first permittee broad permission to use the car with no restrictions as far as a third party's use was concerned. The first permittee permitted another party to drive and that party was involved in an accident. We concluded there was sufficient evidence to support the district court's finding that the second permittee was driving with the implied consent of the owner. *Id.*

Molly's testimony on the implied consent issue is this:

> Q. And what conversation took place between you and Brian? A. I told him I had forgot some things at home. I asked him if he'd drive me. He said it would be after 7:30. I wanted to go before 7:30. So I asked him if *we* could take his pickup. He went and got the keys and tossed them to me.

(Emphasis added.)

From this testimony, the district court could reasonably infer that Brian knew Molly and Brenda would be going back together in the pickup. The court could also find that Brian placed no restrictions on who could drive the pickup on the way back. Additionally, there was evidence that Brian had never told Molly that she was not to let anyone else drive the pickup. Given these three facts, it was reasonable for the court to find that Molly had implied consent from Brian to use the pickup to go to her home and to permit Brenda to drive.

As the district court found, Grinnell's policy only required that Molly have sufficient reason to believe that the use of the pickup was with permission. The policy did not require that her belief be based on actions or statements of the person who actually owned the pickup.

There is substantial evidence to support the district court's finding that Molly had sufficient reason to believe that her use of the pickup at the time of the accident was with permission. She was therefore an insured and covered under the omnibus uninsured motorist clause of Grinnell's policy. She believed Brian owned the pickup because he told her he had paid for it. No one had ever told her otherwise. She did not know that Brian was the only person who had permission to drive the pickup. When he tossed Molly the keys, Brian did not tell Molly it was necessary for her to drive. Nor did he specify who was to drive. *Cf. Gilmore,* 539 N.W.2d at 158 (holding that unlicensed driver who was driving vehicle with permission of owner's permittee could reasonably believe that permittee had authority to permit him to drive vehicle and thus driv-

er was entitled to liability coverage notwithstanding auto policy exclusion for any person "[u]sing a vehicle without a reasonable belief that person is entitled to do so"; driver could have reasonable belief that he was entitled to use vehicle, even though he was unlicensed, where he was doing so at specific request of permittee and actual owner never instructed driver not to drive vehicle nor instructed permittee not to allow others to drive vehicle).

### IV. *Disposition.*

We conclude the district court correctly determined that Molly was not an insured under the omnibus uninsured motorist clause of State Farm's policy and therefore had no coverage under it. We also conclude the district court correctly concluded that Molly was an insured under the omnibus uninsured motorist clause of Grinnell's policy and therefore had coverage under it. Accordingly, we affirm.

**AFFIRMED.**