**Richard Burton HENNING and Diane May Henning, Appellants,**

v.

**SECURITY BANK, Appellee.**

**No. 96–756.**

Supreme Court of Iowa.

June 18, 1997.

Lee M. Walker of Walker, Knopf & Billingsley, Newton, for appellants.

Curtis A. Ward of Brooks & Ward, Marshalltown, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and TERNUS, JJ.

LAVORATO, Justice.

A contractor walked off the job without paying his subcontractors even though the contractor was paid sufficient monies to pay them. Later, the homeowners paid the subcontractors and therefore paid twice for the same work and materials. The homeowners then sought reimbursement from their interim lender for allegedly promising to make sure that the subcontractors were paid by insisting on lien waivers from the contractor before any payment to him.

The district court ruled that the lender bank had no duty to reimburse the homeowners because the homeowners were not legally obligated to pay the subcontractors who had failed to preserve their mechanic's lien rights under Iowa Code chapter 572 (1995). The homeowners' appeal presents the following issue: In the absence of a contractual arrangement with the home-owners, do subcontractors have a common-law right of action based on implied contract or unjust enrichment against the homeowners for the work and materials they furnish? We conclude they do not and affirm.

Our review is governed by how the parties tried the case in the district court. *Grinnell Mut. Reins. Co. v. State Farm Mut. Auto. Ins. Co.*, 558 N.W.2d 176, 178 (Iowa 1997). Because the parties tried the case at law, our review is for error. *Id.* Therefore the district court's findings have the effect of a jury verdict and are binding on us if supported by substantial evidence. *Id.* Evidence is substantial if reasonable minds would accept it as adequate to reach the same findings. *Id.*

Substantial record evidence supports the following facts as found by the district court. Richard Burton Henning and Diane May Henning are husband and wife. In June 1994, the Hennings and Douglas C. Morris of Morris New Home Builders entered into a written contract whereby Morris agreed to build the Hennings a new home for $91,400. The parties later agreed upon changes that increased the cost to $106,155 by the time construction began the following fall.

Morris was the general contractor and had the responsibility to arrange for and pay all subcontractors. The Hennings had some direct dealings with some of the subcontractors. Nevertheless, Morris—not the Hennings—made all of the contractual arrangements for the work the subcontractors were to do.

After the Hennings and Morris executed their contract, the Hennings met with Lesa Udelhoven, the real estate loan officer of Security Bank. The meeting took place in late June. Udelhoven arranged the interim construction financing for the home Morris was to build. The bank agreed to loan the Hennings $79,000; the Hennings were to provide the balance of the construction cost.

The present controversy stems from this June meeting with Udelhoven. The Hennings testified that Udelhoven tried to explain mechanic's liens and lien waivers, but they did not understand her explanation. The Hennings were sure, however, that

Udelhoven assured them they need not worry about lien waivers because the bank would take care of them. Kathleen Vanderpool, the listing realtor representing Morris, was at the meeting and corroborated the Hennings' testimony on this point.

Udelhoven, however, testified that she made no such representation. Udelhoven also testified that she discussed and satisfactorily explained mechanic's liens and lien waivers.

After the June meeting, Udelhoven sent the Hennings a letter outlining the bank's participation in the transaction. The letter makes clear that the Hennings were to "[p]rovide[ ] lien waivers and receipts as requested by the bank." Consistent with the letter, Udelhoven testified that the Hennings—not the bank—were to provide the lien waivers if any were obtained. Udelhoven insisted that she asked the Hennings about lien waivers each time the bank was called upon to make a construction progress payment to Morris, but the Hennings never provided any.

By February 1995, the Hennings were aware that Morris' financial condition was deteriorating. The Hennings were paying Morris; Morris, however, was not paying the subcontractors. When the Hennings told Udelhoven about Morris not paying the subcontractors, Udelhoven told them to seek the advice of an attorney. The Hennings did so.

The Morris–Hennings contract required the Hennings to make the following progress payments to Morris: "$15,000 down payment; $30,000 after foundation; $30,000 after framing; $18,000 after drywall; $13,155 after completion and acceptance." The bank would pay the Hennings each progress payment, and the Hennings in turn would pay Morris. The last progress payment the bank made to the Hennings was on February 15, 1995 for $18,000. The Hennings in turn paid this amount to Morris. That left $13,155 to be paid on completion and acceptance.

Morris did no substantial work after the $18,000 payment. He left the job for good in March and has never claimed he was owed any further payment. When Morris left the job, the contract work was not finished.

However, there was $13,155 left in bank funds to finish the work. In their testimony, the Hennings conceded this amount would have been enough to finish the work in accordance with the contract. The $13,155, however, was not enough to pay the unpaid subcontractors and finish the work. The Hennings' attorney advised them to settle with the subcontractors and "finish the contract." The Hennings did so after borrowing additional money from the bank.

None of the subcontractors gave the Hennings an Iowa Code section 572.14(3) notice. Iowa Code section 572.14(2) provides that, in the case of an owner-occupied dwelling, a subcontractor who has perfected a mechanic's lien can only enforce it to the extent of any sum of money the owner owes the contractor at the time the subcontractor gives the owner a written notice in the form specified in Iowa Code section 572.14(3). The Hennings' home was at the time an owner-occupied dwelling. Notwithstanding the subcontractors' failure to give the Hennings the section 572.14(3) notice, the Hennings paid the subcontractors with their own funds and with additional funds they borrowed from the bank.

Later, the Hennings brought this action against the bank and alleged two theories of recovery. They alleged the bank negligently misrepresented it would obtain lien waivers as loan funds were disbursed. They also alleged the bank was required to take care of the lien waivers as part of the loan agreement and good customer service. The Hennings sought recovery of (1) the payments they made to the subcontractors, (2) additional interest charges for the second bank loan to pay the subcontractors, and (3) attorney fees.

Following a bench trial, the district court found for the bank. The court made no findings as to the two theories of liability asserted by the Hennings. Instead, the court addressed the Hennings' claim as one for indemnification and concluded the bank was not liable to the Hennings.

The Hennings appealed.

To understand the Hennings' argument on appeal, we need to explore the district court's

well-reasoned decision more fully. As the district court noted, the essence of the Hennings' claim against the bank is that the Hennings were called upon to pay third-parties—the subcontractors—money which, according to the law, the bank should have paid. According to the Hennings, the bank's legal obligation to pay stems from either the bank's agreement to protect the Hennings from the subcontractors' claims or from the bank's common-law duty to protect the Hennings.

The district court viewed these theories of liability as essentially an indemnification claim against the bank. Indemnity is a form of restitution. *Hunt v. Ernzen*, 252 N.W.2d 445, 447 (Iowa 1977). As such, it is founded on principles of equity. *Id.* Courts allow indemnity when one person has discharged an obligation that another person should bear. *Id.* Indemnity places the final responsibility where equity would lay the ultimate burden. *Id.* at 447–48.

The district court correctly noted that an essential element in establishing a right to indemnity is that the party asserting indemnity was legally obligated to discharge the obligation for which the party seeks indemnity. *Chicago & N.W. Ry. v. Kramme*, 244 Iowa 944, 947, 59 N.W.2d 204, 206 (1953) (holding that indemnity covers only legal liability and not liability voluntarily assumed).

We agree with the district court that the Hennings had no legal responsibility to pay any of the subcontractors because of Iowa Code section 572.14(2). This provision provides in part:

In the case of an owner-occupied dwelling, a mechanic's lien perfected under this chapter is enforceable only to the extent of the balance due from the owner to the principal contractor at the time written notice, in the form specified in subsection 3, is served on the owner.

Subsection 3 referred to in section 572.14(2) provides in part:

The written notice required for purposes of subsection 2 shall contain the name of the owner, the address of the property charged with the lien, the name, address and telephone number of the lien claimant, and the following statement:

"The person named in this notice is providing labor or materials or both in connection with improvements to your residence or real property. Chapter 572 of the Code of Iowa may permit the enforcement of a lien against this property to secure payment for labor and materials supplied. You are not required to pay more to the person claiming the lien than the amount of money due from you to the person with whom you contracted to perform the improvements. You should not make further payments to your contractor until the contractor presents you with a waiver of the lien claimed by the person named in the notice."

▪ The district court concluded that the Hennings had no legal obligation to pay the subcontractors because of the subcontractors' failure to give the Hennings the Iowa Code section 572.14(3) notice.

The district court found that the Hennings' home is an "owner-occupied dwelling" as defined in Iowa Code section 572.1(4) (" *'Owner-occupied dwelling'* includes a newly constructed dwelling to be occupied by the owner as a homestead, or a dwelling that is under construction and being built by or for an owner who will occupy the dwelling as a homestead.") In their brief, the Hennings agree that Morris was constructing an owner-occupied dwelling for them.

Substantial record evidence supports the district court's finding that the subcontractors never served any section 572.14(3) notices on the Hennings. Substantial record evidence also supports the district court's finding that after the last payment to Morris on February 15, 1995, the Hennings owed Morris no additional amounts. From these findings, the district court correctly concluded there "never was a 'balance due' to the principal contractor which could constitute a res subject to the subcontractors' claims."

The crux of the district court's reasoning that the Hennings had no indemnification claim against the bank is found in the following passage from the court's ruling:

The purpose of section 572.14(2) is to "avoid hardship when the principal contractor goes bankrupt or becomes 'defunct,' as in the present case." *Louie's Floor Covering, Inc. v. DePhillips Interests, Ltd.,* 378 N.W.2d 923, 927 (Iowa 1985). The legislature has concluded those involved in the construction industry are better able to look after themselves than are home buyers. *Carson v. Roediger,* 513 N.W.2d 713, 717 (Iowa 1994). The protection provided by this statute applied to the Hennings here. The unpaid subcontractors could not have asserted valid mechanic's liens against the Henning property without substantially complying with the statute.

The purpose of a mechanic's lien, in the circumstances here, is to provide an alternate source of payment for subcontractors who have supplied material or labor for a construction project. It is based on the principle of restitution to prevent unjust enrichment. 53 Am.Jur.2d *Mechanic's Liens* § 2, at 516 (1970). Without a mechanic's lien, a subcontractor has only the general contractor to look to for payment. The subcontractor has no contract with the homeowner and thus has no remedy against the homeowner, except that created by the mechanic's lien. Since the mechanic's lien remedy has been legislatively abrogated in this case, the subcontractor cannot recover from the homeowner and consequently the homeowner has no legal liability to the subcontractor.

As they did in the district court, the Hennings contend on appeal that the subcontractors' failures to comply with the section 572.14(2) notice requirement do not defeat the Hennings' indemnification claim against the bank. Contrary to the district court's reasoning, the Hennings further contend that in addition to their mechanic's lien rights, subcontractors may pursue common-law actions against the homeowners. In support of their contentions, the Hennings rely heavily on *Frontier Properties Corp. v. Swanberg,* 488 N.W.2d 146 (Iowa 1992).

*Frontier Properties* stands for the proposition that a *general contractor* has, in addition to the statutory mechanic's lien, common-law remedies for the value of materials and labor furnished. *Frontier,* 488 N.W.2d at 149. These remedies may include express and implied contracts. *Id.* at 149–50.

As the district court correctly pointed out, *Frontier* involved a claim by a general contractor against the homeowner, not a subcontractor's claim. There was therefore contractual privity between the general contractor and the homeowner.

In contrast, the subcontractors had no contractual privity with the Hennings. The district court found that (1) Morris was the general contractor and (2) Morris, not the Hennings, made all of the contractual arrangements for the work to be done by the subcontractors. There is substantial record evidence to support these findings.

The Hennings therefore proved no express contracts because they presented no evidence of an agreement between them and the subcontractors that the subcontractors would furnish material and labor at an agreed price. *See Guldberg v. Greenfield,* 259 Iowa 873, 878, 146 N.W.2d 298, 301 (1966) (stating express contract exists when owner requests a party to furnish work and materials at an agreed price and holding that subcontractor failed to prove express contract with homeowner to furnish labor and material at the contract price).

Nor did the Hennings prove any implied contracts with the subcontractors because they presented no evidence that they asked the subcontractors to furnish work and materials. *See id.* at 883, 146 N.W.2d at 304 (implied contract exists when a party at the request of the owner performs work and material without an express agreement for compensation; the law implies a promise on the part of the owner to pay a reasonable compensation for the work and material); *see also Frontier Properties,* 488 N.W.2d at 150 (holding that contractor proved implied contract with homeowner as to "extras" even though there was no agreement as to price; because homeowner requested contractor to furnish extras, law would imply a promise to pay reasonable compensation).

Essentially, the Hennings overlook or ignore the distinction between a general con-

tractor and a subcontractor, a distinction that is critical to their claim:

> Significant legal consequences inhere in the distinction between a subcontractor and contractor. A contractor, by definition, has contractual remedies available against the owner to recover the value of its labor and materials, in addition to the remedy provided by chapter 572. A subcontractor, however, has no contractual remedies against the owner, unless the subcontractor can establish that it was an intended third-party beneficiary of the principal construction contract. Although the Iowa Supreme Court has not addressed the issue, a subcontractor who could establish that it was a third-party beneficiary would have a strong argument that it was not a subcontractor at all, but was a contractor, since it would in effect have a contractual relationship with an owner. In most cases, however, the subcontractor's contractual remedies are only against its contractor. Thus, chapter 572 is generally the only means of recovery by a subcontractor against an owner's property.

Roger W. Stone, *Mechanic's Liens in Iowa,* 30 Drake L.Rev. 39, 45–46 (1980–81). (The Hennings make no claim that any of the subcontractors were intended third-party beneficiaries of the construction contract between the Hennings and Morris. Nor does the evidence support such a claim.) Iowa Code section 572.1(5) incorporates this distinction between contractors and subcontractors based on contractual privity:

> "Subcontractor" shall include every person furnishing material or performing labor upon any building, erection, or other improvement, *except those having contracts therefor directly with the owner*, the owner's agent, or trustee.

(Emphasis added.)

The Hennings' mistake between "contractor" and "subcontractor" leads them to mistake our *Frontier Properties* case as recognizing common-law claims for subcontractors in addition to the remedies in our mechanic's lien law. If a party has a contractual claim against a homeowner, the party is in fact a contractor. If the party is a contractor, then the party has a common-law remedy as well as a statutory remedy.

*Guldberg* makes clear that absent contractual privity with the homeowner a subcontractor may not assert a common-law action against the homeowner premised on implied contract. In doing so, the court cited with approval the following rule:

> Where, however, the contractor sublets his contract, the law will not imply any agreement on the part of the owner to compensate the subcontractor for the work and labor performed by him; the implied obligation of the owner to make compensation to one who performs work and labor in the improvement of his property is taken away by the special contract between the contractor and the subcontractor.

*Guldberg,* 259 Iowa at 883, 146 N.W.2d at 304 (citing 17 C.J.S. *Contracts* § 4(c), at 564 (1963)). The court cited an additional rule to support its conclusion:

> In the absence of special statutory rights and remedies, a subcontractor or materialman has no right to a personal judgment against the owner where there was no contractual relation between them.

*Id.* at 883–84, 146 N.W.2d at 304 (citing 36 Am.Jur. *Mechanic's Liens,* § 284 (1941)). Under the factual scenario here, there is no statute that entitles the subcontractors to a personal judgment against the Hennings.

Contrary to the Hennings' contention, *Guldberg* also makes clear that the subcontractors here are not entitled to recover against the Hennings on the theories of restitution and unjust enrichment. According to *Guldberg*, " 'restitution' and 'unjust enrichment' are modern designations for the older terms of quasi contracts or contracts implied in law." *Id.* at 885, 146 N.W.2d at 305. "A quasi contract or contract implied in law rests upon the equitable principle that one shall not be permitted to unjustly enrich himself at the expense of another or to receive property or benefits without making compensation therefor." *Id.* at 878, 146 N.W.2d at 301. In *Guldberg,* this court denied the subcontractor recovery against the homeowner based on the following rule found in Restatement Restitution § 110 (1937):

A person [the subcontractor] who has conferred a benefit upon another [the owner] as the performance of a contract with a third person [the contractor] is not entitled to restitution from the other [the owner] merely because of the failure of performance by the third person [the contractor].

*Guldberg*, 259 Iowa at 885, 146 N.W.2d at 304.

Here the subcontractors concededly conferred benefits upon the Hennings. But those benefits were conferred in performance of the subcontractors' contracts with Morris, not the Hennings. The subcontractors are therefore not entitled to restitution from the Hennings merely because Morris failed to pay the subcontractors as he agreed to do.

■ In sum, the subcontractors had no statutory or common-law right to recover from the Hennings for their work and materials. Any payments the Hennings made to the subcontractors were therefore voluntary. Because indemnity does not cover voluntary payments, the Hennings must fail in their indemnity claim against the bank for the payments. The district court was therefore correct in its conclusion that the bank had no duty to reimburse the Hennings. We affirm.

**AFFIRMED.**