John Phillip METZ III, Joann Metz,
Jaime M. Metz, and John P.
Metz, IV, Appellants,

v.

AMOCO OIL COMPANY, a Foreign Corporation; Burlington Northern Railroad Company, a Foreign Corporation; Mobil Oil Corp., a Foreign Corporation; Omaha Public Power District, a Nebraska Political Subdivision; and Williams Pipe Line Company, a Foreign Corporation, Appellees.

BURLINGTON NORTHERN RAILROAD
COMPANY, a Foreign Corporation,
Counterclaimant,

v.

John Phillip METZ III and Joann Metz,
Defendants to Counterclaim.

No. 96–1485.

Supreme Court of Iowa.

July 1, 1998.

Rehearing Denied Aug. 11, 1998.

Laura L. Pattermann, Council Bluffs, for appellants.

Thomas R. Buchanan of McDowell, Rice, Smith & Gaar, P.C., Kansas City, Missouri, and Michael G. Reilly of Reilly, Petersen &

Hannan, P.L.C., Council Bluffs, for appellee Williams Pipe Line Company.

Roger Shiffermiller of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., Omaha, Nebraska, for appellee Omaha Public Power District.

Rodney M. Confer of Knudsen, Berkheimer, Richardson & Endacott, Lincoln, Nebraska, and William R. Hughes of Stuart, Tinley, Peters, Thorn & Hughes, Council Bluffs, for appellee Burlington Northern Railroad.

Philip J. Willson of Willson & Pechacek, P.L.C., Council Bluffs, and Louis C. Woolf of Woolf, McClane, Bright, Allen & Carpenter, P.L.L.C., Knoxville, Tennessee, for appellee Amoco Oil Company and Mobil Corporation.

HARRIS, Justice.

Withdrawal of counsel can wreak havoc on the orderly processing of cases in a busy trial court, and it seems that a withdrawal is most likely to occur in civil cases where extremely complicated litigation is also unpromising for one side or the other. Retaining counsel on a continuing basis in such a suit is often problematic and frustrating to a litigant. It can also be frustrating to a trial judge, hard pressed in the important task of moving cases toward resolution. An especially critical point is reached when the fear arises that some tactical advantage is sought by way of counsel's withdrawal. At that point the judge must sort out tactical delays from honest struggles to provide counsel.

In the present case the court carefully sorted out these two possibilities up to a point. Then the court summarily dismissed the case, a dismissal that is challenged in this appeal. The appeal is grounded on a claim that the plaintiffs were denied a chance to proceed pro se. Although we are far from satisfied with the circumstances surrounding the dismissal, we affirm because we find no indication they ever asserted a right to represent themselves or that the court misled them on the point.

In 1991 John Metz was diagnosed with neutropenia. The disease was believed to be the result of his exposure to benzene and other toxic contaminants while he maintained and repaired storage tanks and petroleum distributor facilities for various companies. The Metz family then brought this action, alleging the defendants were negligent in numerous ways for causing the injuries.

After extensive discovery and many delays, trial was set to commence in November 1996. In February 1996 plaintiffs' three attorneys moved to withdraw because they believed medical causation could not be shown. The court granted the motion in an order providing that plaintiffs find new counsel within sixty days or their action would be dismissed. The court noted that "a few additional days would be considered appropriate" if plaintiffs were close to obtaining counsel. Plaintiffs encountered difficulties finding another attorney and sought to extend the sixty-day deadline. Following a hearing, the court granted the motion, ordering them to secure new counsel by July 1, 1996, or the case would be dismissed. On July 19, 1996, the court sua sponte dismissed the case because of plaintiffs' failure to obtain counsel.

In January 1997 plaintiffs, through their present counsel Laura L. Pattermann, moved pursuant to Iowa rule of appellate procedure 10(c) to expand the appellate record. Plaintiffs sought to allow affidavits to serve as a reference in a statement of evidence of what occurred at unreported April 2 and May 30 hearings during which the court considered the matters forming the basis for the extension orders. Attached to the rule 10(c) motion were affidavits of John and Joanne Metz and of their former attorneys. The defendants resisted the inclusion of the affidavits as part of the appellate record and the district court denied the motion as untimely. A challenge to this determination was ordered to be submitted as a part of this appeal.

We are obliged to reject the proffered affidavits as a part of the appellate record. Plaintiffs' rule 10(c) motion was not filed until January 23, 1997 (the same day plaintiffs filed their proof brief with us).[1] The

---

1. Although rejection of the affidavits may seem significant, it is probably not controlling of the

appeal. There is no claim in them that plaintiff John Metz communicated a desire to the court

plaintiffs' notice of appeal was filed September 18, 1996. The mandatory twenty-day filing requirement under rule 10(c) was clearly violated.

I. John Metz contends the district court deprived him[2] of his constitutional right to represent himself under the due process clause of the fifth and fourteenth amendments of the United States constitution and article 1, section 9 of the Iowa constitution. But the record is devoid of any instance in which Metz asserted that right. There is nothing in the record to suggest that the trial court was alerted to any wish on Metz's part to proceed pro se. Any such wish would have seemed contrary to Metz's wishes at the time. He had been represented by successive counsel from the time the litigation was instituted. The trial court had no reason to suppose Metz's prior attorney would have misled him concerning his right to proceed pro se if he wished to do so.

Metz nevertheless maintains the April 2 order, directing plaintiffs to secure new counsel within a certain period or their case would be dismissed, effectively violated his constitutional right to represent himself. The contention is that the judge's order amounted to a veto of his own uncommunicated wish to proceed pro se. We do not see how the order can be so understood.[3] The fact is that Metz had, until then, chosen and managed to secure counsel. His inability to continue in this effort presented both him and a busy court with problems. But, to accept Metz's due process argument under the circumstances would require us to lay on trial courts a burden to advise a litigant on the record of the right to proceed pro se, even for a litigant like Metz who had already had much access to advice of counsel in the matter. Just as the federal courts have, we

decline to do so. *See United States v. Martinez,* 883 F.2d 750, 757–58 (9th Cir.1989), *vacated on other grounds* 928 F.2d 1470 (1991).

The flaw in the assignment is that the due process claim was never asserted in district court and was therefore waived. *Sun Valley Iowa Lake Ass'n v. Anderson,* 551 N.W.2d 621, 642 (Iowa 1996); *Donovan v. State,* 445 N.W.2d 763, 767 (Iowa 1989); *Miller v. Wellman Dynamics Corp.,* 419 N.W.2d 380, 384 (Iowa 1988). The challenge in district court was grounded only on a claim that counsel had been secured and therefore the order had been complied with. The trial court challenge did not hint, though it certainly could have, that the court lacked authority to order the plaintiffs to obtain counsel and also lacked authority to dismiss their action if they failed to do so. In point of fact the court clearly lacked authority to do either. A litigant has a right to appear in court pro se. *Arthaud v. Griffin,* 202 Iowa 462, 464, 210 N.W. 540, 541 (1926).[4]

Nevertheless, even if the order to secure counsel was thus subject to challenge, the court's authority to enter it was never questioned, not even when the order was challenged on other grounds in Metz's motion to set it aside. So the dismissal was authorized under Iowa rules of civil procedure 216 and 230 (authorizing dismissal of action as sanction for disobeying any court order).

We emphasize that we do not approve the manner in which the matter was handled. The proper procedure for a court at such a time is simply to set the cause for trial and advise the parties it will be tried then—with or without counsel. The court should obvi-

---

that he proceed pro se, only that he was prevented from informing the court of his wish to do so.

**2.** Metz can claim no authority to represent his wife and children who are also plaintiffs. In view of the resolution of his pro se claim, however, it is unnecessary for us to explore the matter of counsel for the other plaintiffs.

**3.** When the order was entered April 2, Metz was still represented by counsel who appeared in court to announce withdrawal. The same counsel later appeared in court without him on May

30 to ask for an extension. At all times Metz's counsel was in a position to advise him of the effect of the order, and his right to proceed pro se.

**4.** We do not hold the right to appear pro se is unlimited. For example it might be waived where a tardy request to do so would impede an orderly trial process. *See Devine v. Indian River County Sch. Bd.,* 121 F.3d 576, 581 n. 17 (11th Cir.1997).

ously make it clear at such a time that it is not recommending pro se representation.

The due process challenge fails.

II. Error was not preserved in a number of other assignments as well. For example, the Metz's claim they failed to receive notice and an opportunity to be heard before the default judgment was entered. They assert this failure constituted an abuse of discretion and also violated their due process rights. They assert the district court abused its discretion in entering the default judgment sua sponte. And they claim the district court abused its discretion by entering judgment against them without a finding that their failure to comply with the order was not due to willfulness, fault, or bad faith. As to these assignments, the plaintiffs moved to set aside the default and the motion was submitted on hearing, considered by and ruled upon by the district court. The foregoing contentions were not raised at that time or at any other time in district court. They were therefore waived.

III. Without suggesting any merit in it, we also reject, for want of preservation, plaintiffs' separate claim that the district court abused its discretion in failing to set aside or vacate the default judgment. Our preservation rule requires that issues must be presented to and passed upon by the district court before they can be raised and decided on appeal. *Johnston Equip. Corp. v. Industrial Indem.*, 489 N.W.2d 13, 16–17 (Iowa 1992). Here plaintiffs filed written motions to set aside and vacate the default judgment, but they did not raise the arguments they now present on appeal. In fact plaintiffs' motion to vacate did not set forth any grounds on which relief could be granted under Iowa rule of civil procedure 252. In their amended motion, plaintiffs alleged the default judgment should be set aside because they had "obtained counsel who have agreed to prosecute their case without delays and can be ready for trial." None of the grounds enumerated in Iowa rule of civil procedure 236 were addressed. There is therefore nothing for us to review on this issue. *See In re Trust of Killian,* 494 N.W.2d 672, 675 (Iowa 1993) (we review motions to vacate judgment on assigned errors).

Because we find no merit in any assignment of error, we affirm the trial court default judgment.

**AFFIRMED.**

All justices concur except LAVORATO, J., and CARTER, J., who dissent.

LARSON, J., takes no part.

LAVORATO, Justice (dissenting).

I. The majority concedes the district court lacked authority to order the plaintiffs to obtain counsel. It further concedes the court lacked authority to dismiss the plaintiffs' action if they failed to do so. The majority must so concede because a litigant has a right to prosecute the case pro se.

The majority, however, brushes aside these obvious flaws to the district court's dismissal order in the name of error preservation. It then concludes by way of circular reasoning that the dismissal order was authorized under Iowa Rules of Civil Procedure 216 and 230.

Rule 216, an involuntary dismissal rule, has doubtful application because it provides that "[a] *party* may move for dismissal of any action or claim against the party or for any appropriate order of court, if the party asserting [the action or claim] fails to comply with these rules or any other order of court." (Emphasis added.) No party moved for dismissal; the court dismissed the action on its own. This court has raised but not answered the question whether a trial court has inherent power under this rule to dismiss an action on its own:

> We need not say at this time whether Iowa trial courts possess inherent power to dismiss, or if so, the extent of the power, for we are clear this is not a case for the exercise of such power. Motz' case is a novel one, to be sure, and may ultimately appear to be without merit. But the case is only in the preliminary stages. . . .
>
> We think the trial court should have at least let the case progress in the regular way. If trial courts do possess inherent power to dismiss cases, they should exercise the power with restraint and caution

and not in situations like this one. We hold that under the present circumstances the trial court erred in dismissing the case. *Motz v. Motz,* 207 N.W.2d 580, 581 (Iowa 1973).

Rule 230 provides that a party is in default whenever that party "fails to comply with any order of court."

I submit error preservation, which is a court-imposed rule, should not apply here even if trial courts have inherent authority to dismiss cases on their own. The purpose of the error preservation rule is to afford trial courts an opportunity to correct a valid complaint before action is taken. *Hoekstra v. Farm Bureau Mut. Ins. Co.,* 382 N.W.2d 100, 107 (Iowa 1986). This court recognized the right to proceed pro se over seventy years ago. *See Arthaud v. Griffin,* 202 Iowa 462, 464, 210 N.W. 540, 541 (1926). The right is so ingrained in our law that all judges are aware of the right without the need of litigants to remind them of it. There was, therefore, no need to remind the district court it was without authority to saddle the plaintiffs with the duty to obtain counsel as a condition for proceeding with their case.

Rules 216 and 230 are necessarily premised on the existence of proper authority to dismiss the action. Because there was no such authority here, the district court erred in dismissing the action.

II. Fundamental fairness also dictates that we should not apply the court-imposed rule of error preservation. There was good reason why the plaintiffs did not alert the district court to the fact it was without authority to condition their right to proceed pro se on obtaining counsel. Specifically, the order provided that "[p]laintiffs shall have 60 days from this date in order to secure the services of other attorneys to continue prosecution of their case." To lay persons such an order would naturally imply they had no right to proceed pro se.

In fact, the district court made it very clear the plaintiffs would not be allowed to proceed pro se. In its default order, the court wrote: "A discussion was held at the meeting (April 2 hearing) which clearly explained the plaintiffs could not effectively proceed without an attorney, due to the nature of the case." I believe even the majority would concede that a trial court has no authority to prohibit a pro se litigant from proceeding simply because of the nature of the case.

The district court misled plaintiffs into believing they did not have the right to proceed pro se. To penalize plaintiffs for not asserting this right perverts our error preservation rule and commits a travesty of justice. Fundamental fairness transcends all rules, even court-imposed error preservation rules. Such is the case here. We have inherent power to correct an obvious injustice. We should do so here.

III. Iowa Rule of Civil Procedure 236 governs motions to set aside defaults. The rule allows the district court to set aside a default for mistake, inadvertence, surprise, excusable neglect or unavoidable casualty. The purpose of the rule is to allow determinations of controversies on their merits, rather than on the basis of nonprejudicial inadvertence or mistake. *Paige v. City of Chariton,* 252 N.W.2d 433, 437 (1977).

The plaintiffs alleged all of the rule 236 grounds in their motion to set aside the default. The motion then concluded the court should set aside the default because the "plaintiffs have obtained counsel who have agreed to prosecute their case without delays and can be ready for trial."

For reasons that follow, I think the district court should have set aside the default on the ground of "excusable neglect." We now apply a liberal approach in interpreting excusable neglect. *Central Nat'l Ins. Co. v. Insurance Co. of N. Am.,* 513 N.W.2d 750, 756 (Iowa 1994). District courts must focus on four factors in determining what constitutes excusable neglect:

> First, did the defaulting party actually intend to defend [or prosecute]? Whether the party moved promptly to set aside the default is significant on this point. Second, does the defaulting party assert a claim or defense in good faith? Third, did the defaulting party willfully ignore or defy the rules of procedure or was the default simply the result of a mistake?

Last, whether relief is warranted should not depend on who made the mistake.

*Id.*

Unquestionably, the plaintiffs intended to proceed. They did obtain counsel, quickly moved to set aside the default, and prosecuted this appeal. Ironically they obtained counsel on the very day the district court dismissed their action.

Unquestionably, the plaintiffs are asserting a claim in good faith. There is no evidence to the contrary.

Unquestionably, the plaintiffs did not willfully disobey the court's order—an order that was entered without authority. As I mentioned, they obtained counsel on the very day the district court dismissed their action. The plaintiffs were therefore arguably not even in default.

We will reverse a district court's default ruling for abuse of discretion. *Id.* at 753. We find an abuse of discretion when there is a lack of substantial evidence to support the district court's ruling. *Id.* Evidence is substantial if reasonable minds would accept it as adequate to reach the same findings. *Henning v. Security Bank,* 564 N.W.2d 398, 399 (Iowa 1997). "We are more reluctant to interfere with the grant of a motion to set aside a default than with its denial." *Central Nat'l Ins. Co.,* 513 N.W.2d at 754.

Here when considering all of the evidence on the four factors for determining excusable neglect, I conclude there is no substantial evidence to support denial of the plaintiffs' motion to set aside the default. Reasonable minds would not find this record sufficient to deny the plaintiffs' motion to set aside the default. I therefore conclude the district court abused its discretion in denying the plaintiffs' motion to set aside the default.

The dismissal of this action tragically resulted from a comedy of errors resulting from the district court's lack of authority to forbid the plaintiffs from proceeding pro se. We should therefore not hesitate to intervene. If we do so, the defendants would be no worse off on the merits of the case. Our failure to do so results in a windfall for the defendants.

I would reverse and remand for further proceedings.

CARTER, J., joins this dissent.