Kenneth F. MAGINA, Appellant,

v.

Max L. BARTLETT, Appellee.

No. 96–1596.

Supreme Court of Iowa.

July 29, 1998.

William F. Olinger, Cedar Rapids, for appellant.

Richard A. Pundt, Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

McGIVERIN, Chief Justice.

This case involves a claim for breach of a written agreement concerning distribution of profits from the construction and development of a high-rise office building in Cedar Rapids, Iowa, (hereinafter referred to as the "development"). Plaintiff Kenneth Magina sued defendant Max Bartlett, his former partner and co-investor of the development, claiming Bartlett breached an agreement by failing to pay Magina his share of profits from the development. After a jury returned a verdict for Magina concerning his breach of contract claim, the district court granted defendant Bartlett's motion for judgment notwithstanding the verdict and set aside the jury's verdict.

Upon Magina's appeal, the court of appeals reversed the district court's ruling. On further review, we vacate the decision of the court of appeals and affirm the district court's ruling setting aside the jury's verdict and entering judgment in defendant Bartlett's favor.

### I. Background facts and proceedings.

**A. Past relationship of the parties.** Sometime in 1979, plaintiff Kenneth F. Magina and defendant Max L. Bartlett entered into an oral agreement for purposes of acquiring and developing the air rights over the Ground Transportation Center in downtown Cedar Rapids, Iowa. The plan was to develop the air rights by building a ten to fifteen story high-rise office building under a condominium concept whereby individual floors or one-quarter sections of floors would be pre-sold as condominium units. Magina and Bartlett were to be equal partners in the project. Magina, with his experience in real estate and management of commercial building, was to manage the daily operations of the development, while Bartlett would provide the financial backing.

To carry out their plan, Magina and Bartlett negotiated a fifty-year lease for the air rights over the proposed development with the city of Cedar Rapids, with Bartlett named as lessee; the air rights lease was to be held in Bartlett's name alone.

As work on the development progressed, the relationship between Magina and Bartlett deteriorated. As a result, Magina and Bartlett renegotiated their business relationship on June 13, 1980, pursuant to a written agreement entitled "Agency Agreement." This agreement stated that the lease of the air rights and all rights incidental thereto were the personal property of Bartlett and that Bartlett would have the exclusive right to make all decisions relative to the development. The Agency Agreement further stated that Bartlett was to retain the services of Magina as an independent contractor to act as a general sales and rental agent and to perform administrative and ministerial functions.

**B. The "Settlement Agreement."** The development proceeded, but the business relationship between Magina and Bartlett further deteriorated. Magina and Bartlett eventually terminated their business relationship with respect to the development on September 22, 1980, according to terms set forth in a document entitled "Settlement Agreement."[1] It is this agreement that is the basis of Magina's breach of contract claim against Bartlett.

The essential purpose of the Settlement Agreement was to establish Magina's share of the profits generated by the development, although he would no longer play an active part in the construction and operation of the development. To achieve this purpose, the

---

1. The Settlement Agreement superseded the previous Agency Agreement (executed June 13, 1980) and declared it to be null and void.

Settlement Agreement contained three possible contingent forms of consideration that Magina would realize upon Bartlett's transfer of his air rights to the development to a third party.

Paragraph one of the Settlement Agreement entitled "TRANSFER OF LEASE OF AIR RIGHTS" states that if Bartlett transfers his lease of the air rights to a third party for periodic cash payments, then Magina would receive one-half of those periodic cash payments as those payments were received.

Paragraph two entitled "PARTNERSHIP AND DEVELOPMENT" states that it is Bartlett's intention to form a limited partnership with a third party concerning the development. Under this arrangement, Bartlett was to assign twenty-five percent of his partnership interest to Magina.

Paragraph three entitled "SALE OF PROPERTY" states that if in the transfer of the air rights, Bartlett in his capacity as a partner receives property other than cash, Bartlett shall pay Magina ten percent of the net sales proceeds upon resale of the property.

The Settlement Agreement also states that Bartlett would provide Magina with copies of any agreements Bartlett entered into with third parties or any material modifications thereof.

### C. Bartlett's later transactions with third parties.

After Magina and Bartlett terminated their business relationship, Bartlett executed a written agreement with Cedar Rapids businessman, Wayne Engle, on October 3, 1980, for purposes of completing the development.[2] Bartlett and Engle agreed to form a limited partnership with Engle acting as general partner and Bartlett as a limited partner. According to the terms of the agreement, Bartlett would assign his air rights lease to Engle, as his capital contribution to the limited partnership, which would in turn transfer the air rights to a developmental entity that Engle was going to form. The agreement also stated that Bartlett was to receive at least one floor of the development, depending on the number of floors in the building when completed.

For reasons that do not appear in the record, Bartlett and Engle never formed the limited partnership contemplated in the October 3, 1980, agreement. They did, however, later renegotiate their business relationship pursuant to an agreement entitled "Agreement of Reformation and Modification," which they signed on March 1, 1981. The parties to the agreement are identified as Bartlett, Engle Center Associates, Ltd., a limited partnership, and Engle. According to this agreement, Engle agreed to purchase Bartlett's interest in the air rights lease for $725,000. That same day, Bartlett signed a Purchase Agreement with Engle, doing business as Engle Center Associates, Ltd., to purchase the fourth floor of the planned development for $725,000, according to a periodic payment plan identical to Bartlett's sale of the air rights to Engle as explained in the Agreement of Reformation and Modification.

Bartlett and Engle again modified their business relationship on February 12, 1982, by signing an agreement entitled "Addendum to Agreement of Reformation and Modification" and an addendum to the March 1 purchase agreement. These agreements stated that if Bartlett defaulted on his payment of $725,000 for the fourth floor, or if Engle defaulted on his payment of $725,000 for the purchase of the air rights lease, that each party's only recourse was to withhold payment of their own obligation under the respective agreements. On that same date, Engle Center Associates, Ltd., signed the conveyance of the fourth floor of the development to Bartlett.

Neither Bartlett nor Engle made any cash payments to each other concerning the transfer of the air rights and the purchase of the fourth floor. Although no cash was exchanged between them, Bartlett and Engle ultimately received what they bargained for in the March 1 agreement in that Bartlett received a fourth floor valued at $725,000 and Engle received the air rights under the lease with the city. The transfer was conducted in

---

**2.** This agreement between Bartlett and Engle was dated September 22, 1980, but signed on October 3, 1980.

this manner to accomplish a tax-free exchange of property.

The development was completed sometime in 1983. Bartlett completed construction of the fourth floor and was the owner thereof at the time Magina filed his petition.

**D. The present action.** On March 24, 1992, Magina filed a petition against Bartlett in district court, asserting, inter alia, that Bartlett had breached the September 22, 1980, Settlement Agreement by failing to pay Magina one-half of the value of the fourth floor as required by paragraph one of that agreement.[3] Magina also claimed Bartlett breached the Settlement Agreement by failing to give Magina copies of Bartlett's agreements entered into with third parties.

After a significant delay in the proceedings, the case was finally tried to a jury. The only claim tried to the jury was Magina's claim concerning Bartlett's alleged breach of the September 1980 Settlement Agreement. At the close of Magina's evidence, Bartlett moved for a directed verdict, asserting that the evidence failed to show that he breached the Settlement Agreement. The court denied the motion. After the evidence was completed, the jury returned a verdict in Magina's favor concerning his breach of contract claim for one-half of $725,000, the value of the floor, less some miscellaneous expenses.

Bartlett subsequently filed a combined motion for new trial or remittitur, and judgment notwithstanding the verdict. The district court granted the motion based on its conclusion that the undisputed facts showed that Bartlett received no cash for his transfer of his interest in the air rights lease to Engle in exchange for the fourth floor. The court thus determined that Bartlett did not breach the September 22, 1980, Settlement Agreement and that Magina was not entitled to one-half of the value of the floor. Since the jury apparently found that the parties had exchanged cash, although no evidence so showed, the court concluded that the jury's verdict could not stand.

The court further concluded that, of the three possible forms of consideration available to Magina under the Settlement Agreement, Magina was only entitled to ten percent of the cash proceeds upon Bartlett's sale of the fourth floor, as stated in paragraph three of the Settlement Agreement. Impliedly, the court's reasoning was that because Bartlett had not yet sold the fourth floor, Magina was not entitled to any proceeds from the development. Thus, no breach of the Settlement Agreement had yet occurred and there was no substantial evidence to support the jury's verdict in favor of Magina.

Magina appealed. Upon our transfer, the court of appeals reversed the district court's ruling and reinstated the jury's verdict in Magina's favor. Thereafter, we granted defendant's application for further review.

## II. Standard of review.

■ The district court sustained defendant Bartlett's motion for judgment notwithstanding the verdict. Iowa Rule of Civil Procedure 243(b) (1996) provides:

> If the movant was entitled to have a verdict directed for him at the close of all the evidence, and moved therefor, and the jury did not return such verdict, the court may then either grant a new trial or enter judgment as though it had directed a verdict for the movant.

The purpose of rule 243(b) is to afford the trial court an opportunity to correct its error in failing to sustain a motion for directed verdict where the movant was entitled to a directed verdict at the close of all evidence. *Meeker v. City of Clinton,* 259 N.W.2d 822, 827 (Iowa 1977). When considering a motion for judgment notwithstanding the verdict on appeal, we view the evidence as the trial court did in ruling on the motion, that is, in the light most favorable to the party against whom the motion was directed. *East Broadway Corp. v. Taco Bell Corp.,* 542 N.W.2d 816, 820 (Iowa 1996).

■ A motion for judgment notwithstanding the verdict should be denied if there is

---

**3.** In addition to his breach of contract claim, Magina asserted claims for partnership accounting, breach of fiduciary duty, and negligent mis- representation. The only issue presented at trial was the breach of contract claim.

substantial evidence to support the claim. *Faught v. Budlong*, 540 N.W.2d 33, 35 (Iowa 1995). Conversely, absent such evidence, judgment notwithstanding the verdict may be sustained. *Id.* "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Johnson v. Dodgen*, 451 N.W.2d 168, 171 (Iowa 1990).

### III. Analysis of Magina's breach of contract claim.

On further review to us, defendant Bartlett contends that the court of appeals erred in reversing the judgment of the district court. Specifically, Bartlett asserts that the undisputed facts in the record show that he received the fourth floor, which was property other than cash, in return for transfer of the air rights to Engle, and thus he had no duty to pay Magina one-half of the value of the fourth floor. We conclude that the district court was correct in granting judgment notwithstanding the jury's verdict.

To clarify, the only agreement at issue in this case is the September 22, 1980, Settlement Agreement between Magina and Bartlett. The questions presented are whether the evidence shows that Bartlett breached the Settlement Agreement and whether Magina is entitled to damages for any such breach.

"Construction" of a contract is the process of determining the legal effect of the provisions of a contract and is always a matter of law to be resolved by the court. *Taylor Enter. v. Clarinda Prod. Credit Ass'n*, 447 N.W.2d 113, 115 (Iowa 1989). When interpreting the provisions of a contract, the parties' intent controls. *Lange v. Lange*, 520 N.W.2d 113, 119 (Iowa 1994). In doing so, "we give effect to language of the entire contract in accordance with its commonly accepted and ordinary meaning." *Id.*

Here, there seems to be no dispute concerning the proper interpretation of the language used in the Settlement Agreement. The real dispute concerns the proper application of that language to Magina's relationship with Bartlett at the time Bartlett received the fourth floor. The narrow issue we must examine is which of the three possible contingent forms of consideration available under the Settlement Agreement governs the relationship between Magina and Bartlett as presented under the undisputed facts.

As previously stated, the Settlement Agreement established three possible types of consideration that Magina would receive upon Bartlett's transfer of the air rights to a third party.[4] Thus, Magina's share of the proceeds from the development were dependent or contingent upon Bartlett's future business dealings with third parties.

Paragraph one requires Bartlett to pay Magina one-half of any *cash payments* that he receives in exchange for transfer of his

---

4. The three possible types of consideration available to Magina are set forth in separate paragraphs of the Settlement Agreement, as shown below:

   1. TRANSFER OF LEASE OF AIR RIGHTS.
   It is Bartlett's intention to transfer his Lease to the Air Rights to certain Third Parties in exchange for certain periodic *cash payments. The parties agree that as said payments are received,* they shall first be applied against all expenses incurred by Bartlett with regard to the Development (including cash contributions made by each of the parties hereto in the approximate amount of $1,000 each), with *any excess to be distributed equally to Bartlett and Magina.* Bartlett shall provide Magina with a periodic accounting upon the receipt of each payment and shall, upon request, provide Magina with copies of all invoices relative to expenses of the Development.
   2. PARTNERSHIP AND DEVELOPMENT.
   It is anticipated that Bartlett will become a limited partner of said Third Parties with re-

   gard to the Development. It is agreed by the parties hereto that, except as modified by paragraph 3 with regard to Magina's right to ten percent (10%) of the proceeds on resale, *Bartlett shall assign twenty-five percent (25%) of his partnership interest to Magina,* and, consistent therewith, Magina shall recognize twenty-five percent (25%) of Bartlett's partnership income, credits and other tax attributes and burdens and twenty-five percent (25%) of cash or other property distributed to Bartlett as a partner; ... Magina shall be entitled to draw his twenty-five percent (25%) interest in the cash flow generated hereunder as periodically agreed, but not less than annually.
   3. SALE OF PROPERTY.
   *If Bartlett* in his capacity as a partner *receives property other than cash, upon the resale of said property Magina shall be entitled to an amount equal to ten percent (10%) of the net sales proceeds* (defined as gross sales price reduced by all costs of closing).... (Emphasis added.)

interest in the air rights lease. The undisputed facts in the trial record show, however, that Bartlett at no time received cash or "cash payments" from Engle concerning the transfer of the air rights and the purchase of the fourth floor. Since Bartlett received no cash, he had no duty under the Settlement Agreement to pay Magina any money at this time.

Bartlett, however, received the fourth floor of the development in exchange for transfer of the air rights lease to Engle, which clearly qualifies as "property other than cash." This is exactly the scenario contemplated by paragraph three of the Settlement Agreement. Thus, of the three possible forms of consideration available to Magina under the Settlement Agreement, Magina is only entitled to ten percent of the net sale proceeds upon Bartlett's sale of the fourth floor.[5]

Because Bartlett received no cash concerning his transfer of his interest under the air rights lease in exchange for the fourth floor of the development, Bartlett had no duty to pay Magina one-half of the value of the floor. Magina thus failed to present substantial evidence to support his claim that Bartlett breached any of the terms of the September 22, 1980, Settlement Agreement. Accordingly, the district court properly set aside the jury's verdict in granting defendant Bartlett's motion for judgment notwithstanding the verdict.

We note that the only claim tried to the jury was Magina's breach of contract claim. Therefore, nothing in our decision affects Magina's remaining claims, if any, including his rights against Bartlett under paragraph three of the Settlement Agreement.

We have considered other contentions raised by Magina in this appeal and find them either to be without merit or unnecessary to address.

### IV. Disposition.

We conclude that the district court properly sustained defendant Bartlett's motion for judgment notwithstanding the verdict, there-

by setting aside the jury's verdict in favor of plaintiff Magina. We vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

---

**5.** Paragraph two of the Settlement Agreement has no application to the facts of this case because Bartlett and Engle did not form a limited

partnership so as to trigger the provisions of that paragraph.