CITY OF DUBUQUE, an Iowa Municipal Corporation; Audubon County, an Iowa Municipal Corporation; Black Hawk County, an Iowa Municipal Courts Corporation; Cerro Gordo County, an Iowa Municipal Corporation; Clinton County, an Iowa Municipal Corporation; Muscatine County, an Iowa Municipal Corporation; Scott County, an Iowa Municipal Corporation; on behalf of Themselves and All Others Similarly Situated; and Dubuque County, an Iowa Municipal Corporation, Court Administration Appellees,

v.

IOWA TRUST, et al., Defendants,

and

Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C., Appellee,

Bankers Trust Company, Intervenor— Appellant.

No. 96–2024.

Supreme Court of Iowa.

Dec. 23, 1998.

Mark McCormick, Roger T. Stetson and Margaret C. Callahan of Belin Lamson McCormick Zumbach Flynn, a Professional Corporation, Des Moines, for intervenor-appellant.

Thomas D. Hanson and Barry A. Russell of Hanson, Bjork & Russell, L.L.P., Des Moines, for municipal appellees.

James K. Horstman, Brigid E. Kennedy and Lloyd E. Williams, Jr., of Williams & Montgomery Ltd., Chicago, Illinois, and Dennis D. Jerde of Davis, Brown, Koehn, Shors & Roberts, Des Moines, for appellee Davis, Hockenberg, et al.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL and CADY, JJ.

McGIVERIN, Chief Justice.

This is another case to reach us concerning the wrongful conversion by third persons of funds invested in the Iowa Trust by plaintiff municipalities. In a prior decision regarding this matter, *see City of Dubuque v. Iowa Trust*, 519 N.W.2d 786, 790 (Iowa 1994), we held that, although the receiver was pursuing claims on behalf of the trust, the individual municipal investors had standing to pursue their negligence and breach of contract claims against the defendant law firm of Davis, Hockenberg, Wine, Brown, Koehn, & Shors, P.C., the firm that represented the Iowa Trust when the conversion of funds occurred.[1]

In this subsequent class action litigation concerning plaintiff investors' malpractice and breach of contract claims against the Davis firm, the question we must decide is whether the district court properly approved a settlement agreement between plaintiffs and the Davis firm. In the district court, Bankers Trust Company, the custodian of Iowa Trust assets, intervened and objected to the settlement agreement between plaintiffs and the Davis firm. Bankers Trust contended that, according to the terms of its 1993 settlement agreement with the receiver, it was entitled to a portion of the settlement proceeds that the Davis firm agreed to pay to plaintiffs.

Upon our review of an interlocutory appeal by Bankers Trust, we believe under the present record that plaintiffs had good cause to settle their claims against the Davis firm. We also conclude that the district court properly approved the settlement agreement between plaintiffs and the Davis firm. We further conclude that Bankers Trust is not entitled to any portion of the proceeds that the Davis firm will pay to plaintiffs under the

---

1. *See also Carr v. Bankers Trust Co.,* 546 N.W.2d 901 (Iowa 1996) (action by individual trustees of Iowa Trust against Bankers Trust and Davis law firm for negligence and defamation arising from loss of trust funds).

settlement agreement and that the district court correctly overruled Bankers Trust's objection thereto. We affirm the judgment of the district court.

## I. Background facts and proceedings.

The Iowa Trust was established in 1990 as an entity through which political subdivisions in Iowa could pool surplus treasury funds for investment. Denman & Company/Institutional Trust Management (ITM) acted as trust administrator of Iowa Trust assets. ITM and Denman were owned and controlled by Steven Wymer. Bankers Trust Company of Des Moines, Iowa, was subsequently appointed as custodian of Iowa Trust assets.

On November 15 and 21, 1991, Wymer, acting on behalf of ITM and through Bankers Trust, sold securities to the Iowa Trust at an inflated price of $6.5 million over market value.

On November 25 and 26, 1991, Wymer, through his entities, misappropriated and transferred more than $68 million in United States treasury securities from the Iowa Trust. The transaction occurred when Wymer requested Bankers Trust to wire transfer more than $68 million of government securities held by the Iowa Trust to an account controlled by Wymer and Denman/ITM. As a result of Wymer's misdealings, the Iowa Trust lost more than $75 million in assets.

After discovery of Wymer's misdealings, several Iowa cities and counties, as participants and investors in the Iowa Trust, filed a petition in equity on December 17, 1991, against the Iowa Trust and its individual members and officers, asserting that defendants breached their fiduciary duties by failing to properly manage trust assets. Plaintiffs also requested that a receiver be appointed to manage the assets of the Iowa Trust.

The district court appointed David J. Lyons, who was then Insurance Commissioner of the State of Iowa, as receiver for the Iowa Trust.

In November 1992, plaintiffs sought leave to amend their petition to add as a defendant, the Davis law firm, which provided legal services to the Iowa Trust. Plaintiffs also sought to certify the cause as a class action so that all affected government entities could be represented in accordance with Iowa rule of civil procedure 42.2.

The receiver resisted the amendment, claiming that by standing in the shoes of the trustees, he held exclusive and plenary power to sue for damages caused to the Iowa Trust by third parties. The Davis firm moved to dismiss the amended petition on the same grounds asserted by the receiver and also resisted class certification of plaintiffs claims. The court overruled the Davis firm's motion to dismiss as well as the receiver's objection and granted plaintiff's motion to amend their petition. The court also certified plaintiff's claims as a class action and joined the receiver as an indispensable party plaintiff.

Upon appeal by the Davis firm, we held that plaintiff municipalities had standing to pursue their negligence and breach of contract claims against the Davis firm. *City of Dubuque*, 519 N.W.2d at 789–90. We also held that the district court properly certified plaintiff's claims as a class action. *Id.* at 793. We remanded the case for further proceedings.

In subsequent proceedings, the receiver, acting on behalf of Iowa Trust, negotiated a settlement agreement with Bankers Trust which had acted as custodian of Iowa Trust assets.[2] The district court (Judge Streit) approved the settlement agreement on February 12, 1993. Pursuant to the agreement, Bankers Trust agreed to pay the Iowa Trust $4 million. In return, the receiver agreed to release and discharge Bankers Trust from all claims and liability which the Iowa Trust may have regarding its actions as custodian of trust assets.

The 1993 settlement agreement further provided that Bankers Trust would be entitled to a refund up to $4 million if the Iowa Trust recovered, from "sources" outlined in the agreement, more than $72 million in trust assets. The $72 million figure was defined as the "Loss," which is the amount claimed lost

---

**2.** Plaintiffs never formally named Bankers Trust as a defendant in any of the proceedings.

by Iowa Trust when Bankers Trust transferred the treasury securities on November 25 and 26, 1991. The agreement defined as a "source," to be counted toward the $72 million, the recovery of any damages by plaintiffs and the Iowa Trust from the Davis firm, that were *not* allocated to losses arising out of the November 15 and 21, 1991 transactions. The agreement also stated that "[t]he Receiver agrees not to settle the claim against [the Davis firm] for less than $4 million absent good cause."

In December 1994, the district court approved the receiver's petition to dissolve the receivership. The court also appointed an administrator of Iowa Trust assets who assumed all legal duties held by the receiver, including the right to bring any further claims on behalf of the Iowa Trust. Thereafter, the administrator in turn assigned to the individual plaintiff municipalities all rights to pursue any action against the Davis firm.

In November 1995, plaintiff's suit against the Davis firm was tried to the court concerning only the issue of liability. The liability of Bankers Trust, although a non-party, was also tried.

In January 1996, the district court (Judge Hutchison) issued its ruling fixing the liability of the Davis firm and Bankers Trust concerning Wymer's misdealings of trust assets on November 15 and 21, and on November 25 and 26, 1991. The court apportioned no fault to Bankers Trust concerning the transactions of November 15 and 21 and thus found the Davis firm 100 percent at fault for those transactions. As to the transactions that occurred on November 25 and 26, the court found Bankers Trust and the Davis firm each fifty percent at fault. Trial concerning the issue of damages was scheduled for a later date.

On February 12, 1996, Assistant Attorney General Scott Galenbeck sent a letter to counsel for the plaintiffs that was later made a part of the record. In the letter, Galenbeck outlined his calculations concerning the amount of money recovered by the Iowa Trust, with the assistance of the Iowa Attorney General's office both inside and outside of Iowa, as of January 27, 1993, and how that amount compared with Bankers' Trust $4 million refund clause in the 1993 settlement agreement with the receiver. According to his calculations, Galenbeck opined that once the Iowa Trust recovered another $471,030 from sources defined in the 1993 settlement agreement, the refund provision would be triggered and Bankers Trust would be entitled to a refund of up to $4 million.[3]

Prior to trial of the damages phase of the suit against the Davis firm, plaintiffs and the Davis firm reached a settlement agreement. Pursuant to the agreement, the Davis firm agreed to pay plaintiffs $2 million to settle all claims. Specifically, the agreement allocated $471,030 to lost principal and interest to cover the losses resulting from the November 25 and 26 transactions, and more than $1.5 million was allocated to consequential damages and for attorneys fees, expenses, and lost interest resulting from the November 15 and 21 transactions.

An application was filed, and a court hearing set, for consideration of approval of the proposed settlement. Notice of the proposed settlement was mailed to all class members. No plaintiff registered an objection to the proposed settlement agreement with the Davis firm. Bankers Trust, however, filed an objection and a petition for intervention. Bankers Trust asserted that plaintiffs could not allocate a specific amount of damages to the November 15 and 21, and to the November 25 and 26 transactions so as to avoid reaching the $72 million "Loss" mark.

The district court allowed Bankers Trust to intervene but overruled Bankers Trust's objection and approved the settlement. The court concluded that Galenbeck's calculation, that only $471,030 remained to be collected

---

3. Galenbeck explained that the total Iowa Trust recoveries had been calculated at $77,634,985. From that amount, $6,106,015 received from the city of Marshalltown was deducted because recoveries from Marshalltown were not mentioned in the Bankers Trust/Iowa Trust settlement agreement.
After that deduction, Iowa Trust recoveries counting toward the $72 million "Loss" were calculated at $71,528,970. The difference between $72 million and the recoveries received ($71,528,970) is $471,030, the amount Galenbeck believed plaintiffs would be entitled to receive before the $4 million refund provision is triggered.

by plaintiffs before the refund provision was triggered, was incorrect. The court noted that of the total amount recovered by the Iowa Trust so far, no allocation had been made to particular transactions (i.e. between the November 15 and 21 transactions and the November 25, 26 transactions), to principal or interest, or to consequential damages. The court believed, however, that "all recoveries must be allocated between all categories of damages simultaneously and not first attributed to the "Loss," as defined in the Receiver–Bankers Trust 1993 settlement agreement. The court thus concluded that the amount plaintiffs would receive from the Davis firm, added to the amount already recovered, would not put plaintiffs over the $72 million "Loss" mark and therefore did not trigger Bankers Trust's right to a refund of up to $4 million.

Additionally, the district court concluded, citing Iowa rule of civil procedure 42.12(d)(5), that plaintiffs had "good cause" to agree to the settlement proposed by the Davis firm for less than $4 million because the proposed settlement appears to be in the best interest of the class.

Thereafter, Bankers Trust filed an Iowa rule of civil procedure 179(b) motion which the district court denied.

We granted Bankers Trust an interlocutory appeal. Bankers Trust asserts that the district court erred in approving plaintiffs' settlement agreement with the Davis firm.

## II. Standard of review.

■ Plaintiffs filed their initial action against the Iowa Trust and the Davis firm in equity. However, at the time plaintiffs and the Davis firm submitted the proposed settlement agreement to the court for approval, the nature of the action had changed to an action at law. This is because approval of a settlement agreement, which is essentially a contract, is a law action. *See Waechter v. Aluminum Co. of America*, 454 N.W.2d 565, 568 (Iowa 1990) (settlement agreements are essentially contracts). Therefore, our standard of review is for errors at law. Iowa R.App. P. 4; *see also Henning v. Security Bank*, 564 N.W.2d 398, 399 (Iowa 1997) (standard of review on appeal is governed by how

parties tried the case in district court). In such cases, the district court's findings are binding on us if supported by substantial evidence. *Henning*, 564 N.W.2d at 399.

■ Under federal rule of civil procedure 23(e) concerning approval of settlement agreements in class actions, a district court's approval of a settlement agreement will not be set aside absent an abuse of discretion. *Cf. Girsh v. Jepson*, 521 F.2d 153, 156 n. 7 (3d Cir.1975); *see also* 32B Am.Jur.2d *Federal Courts* § 2129, at 500 (1996). We believe a similar abuse of discretion standard applies to a district court's authority in reviewing settlement agreements under Iowa rule of civil procedure 42.12.

## III. Did the district court properly approve the settlement agreement between plaintiffs and the Davis firm?

Before addressing whether the district court properly approved the settlement agreement between plaintiffs and the Davis firm, we first believe it helpful to review portions of the settlement agreements relevant to this appeal.

### A. 1993 settlement agreement between receiver and Bankers Trust.

The 1993 settlement agreement between the receiver and Bankers Trust was to settle any claims the receiver might have against Bankers Trust for losses arising from the November 25 and 26, 1991 transactions when Bankers Trust transferred the Iowa Trust treasury securities at Wymer's request. It states in pertinent part:

1. Bankers will pay the Receiver the sum of four million dollars ($4,000,000) prior to December 31, 1992 for immediate distribution by the Receiver to Iowa Trust participants. This amount constitutes the maximum extent of Bankers' liability to the Iowa Trust under this agreement;

2. Bankers will be entitled to a refund of any portion of the $4,000,000 if the Iowa Trust recovers the "Loss" from other sources as set forth below:

a. The "Loss" is defined as *$72,000,000 which is the amount claimed lost by*

*Iowa Trust when Bankers Trust transferred out of its custody the treasury notes owned by Iowa Trust, plus an amount for attorneys fees and expenses incurred in trying to recover the funds and interest lost.*

b.  The recoveries will include any money recovered by Iowa Trust from the forfeited estate of Steven Wymer or ... from any of the following presently *pending actions*:

. . . .

v.  The claim against Davis, Hockenberg, Wine, Brown, Koehn and Shors, P.C. as set forth in *City of Dubuque, et al. v. Iowa Trust,* ... *to the extent not allocated to losses arising out of transactions on November 15, and 21, 1991 between ITM and the Iowa Trust.*

c.  If the recoveries from the sources set forth above combined with the $4 million dollars paid by Bankers Trust is greater than $72 million, Bankers Trust will be entitled to a refund for every dollar recovered over $72 million up to $4 million.

. . . .

e.  The Receiver *agrees not to settle the claim against Davis, Hockenberg for less than $4 million absent good cause. Bankers Trust shall have standing to object to any settlement with Davis, Hockenberg.*

(Emphasis added.)

### B.  Settlement agreement between plaintiffs and the Davis firm.

The proposed settlement agreement between plaintiffs and the Davis firm expressly allocated a portion of the settlement amount to specific items of damages:

Whereas the parties agree that defendants $2 million payment is intended to and will be *allocated to and settle plaintiffs' claims of (1) $471,030 in lost principal and interest,* (2) over $1.5 million in consequential damages, including, but not limited to administrative costs, borrowing costs, deferred project costs, legal fees, and interest, (3) attorneys fees and expenses incurred by the plaintiff in actions to recoup Iowa Trust funds lost as the result of Wymer's transactions which occurred on November 15 and 21, 1991 and (4) any interest lost as the result of those two transactions, all of which are not subject to claim of interest of Bankers Trust, . . . .

(Emphasis added.)

The agreement also provided that the Davis firm's insurer, Home Insurance Company, agreed to indemnify plaintiffs up to $2 million from any judgment that might later be entered against them in Bankers Trust's favor.

### C.  Analysis.

■  Having set forth the relevant portions of the settlement agreements at issue in this appeal, we now consider whether the district court properly approved the settlement agreement between plaintiffs and the Davis firm, and whether the court correctly overruled Bankers Trust's objection thereto.

■  1.  As noted above, settlement agreements are essentially contracts. *Waechter,* 454 N.W.2d at 568.  As such, we apply general principles of contract interpretation when reviewing settlement agreements. *Fees v. Mutual Fire & Auto. Ins. Co.,* 490 N.W.2d 55, 58 (Iowa 1992).  The intent of the parties controls the construction of the terms of the agreement. *Magina v. Bartlett,* 582 N.W.2d 159, 163 (Iowa 1998).  We have said, "voluntary settlement of legal disputes should be encouraged, with the terms of settlement not inordinately scrutinized. . . . The typical settlement resolves uncertain claims and defenses, and the settlement avoids the need for further legal proceedings." *Fees,* 490 N.W.2d at 58 (citations omitted).

2.  Federal rule of civil procedure 23(e) concerning approval of class action settlements is somewhat analogous to Iowa rule of civil procedure 42.12(d).  Rule 23(e) states:

A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

Iowa rule of civil procedure 42.12(d) states that upon the hearing concerning a settlement or compromise in a class action, the court may permit dismissal of the class action without prejudice, approve the compromise, disapprove the compromise, see Iowa R. Civ. P. 42.12(d)(1)—(4), or "take other appropriate action for the protection of the class and in the interest of justice," see id. at 42.12(d)(5).

Although federal rule 23(e) does not specify a particular standard concerning approval of settlement agreements, cases and commentators have interpreted federal rule 23(e) to mean that a court is required to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *In re General Motors Corp. Pick-Up Truck Fuel Tank,* 55 F.3d 768, 785 (3d Cir.1995) (citations omitted). In other words, the court must determine whether the settlement is fair, reasonable and adequate. *See id.; see also Parker v. Anderson,* 667 F.2d 1204, 1209 (5th Cir. Unit A 1982) (court only gives approval to class action settlement agreements that are fair, adequate and reasonable).

We believe this standard is appropriate for use by a district court when considering approval of a settlement agreement under Iowa rule of civil procedure 42.12(d)(5). Applying this standard to the record, we conclude that the district court correctly determined that the settlement agreement was in the best interests of plaintiff class members and that the court thus properly approved the settlement agreement.

The district court found that plaintiffs' total unrecovered damages amounted to $9,787,943, and that the amount allocable to the Davis firm was $4,686,178. Based on these figures, the court found that a settlement of $2,000,000 together with the $2 million indemnity provision was fair and reason-

able, given the many issues presented and the uncertainties of litigation. Additionally, none of the plaintiffs objected to the terms of the settlement agreement. *See Holden v. Burlington N., Inc.,* 665 F.Supp. 1398, 1421 (D.Minn.1987) (noting that although a district court should hesitate to infer that the class supports a settlement merely because its members are silent, silence coupled with other indicia of fairness provides further support for approval). Based on these facts, we believe that plaintiffs had good cause for choosing to settle their claims against the Davis firm, rather than proceed with the expense and uncertainties involved in a trial and possible appeal.

The district court's finding that plaintiffs had good cause to settle their claims against the Davis firm for $2 million likewise disposes of Bankers Trust's contention that plaintiffs breached the terms of the 1993 settlement agreement between Bankers Trust and the receiver which required plaintiffs to settle their claims against the Davis firm for no less than $4 million, absent good cause.[4]

We agree with the district court's conclusion that plaintiffs had good cause for settling their claims against the Davis firm and that the terms of the settlement agreement are fair and reasonable to plaintiff class members.

3. With respect to Bankers Trust's objection to the settlement agreement, we agree with the district courts finding that the terms of plaintiffs' settlement agreement with the Davis firm did not trigger Bankers Trust's right to a refund of the $4 million it paid to the receiver under the 1993 settlement agreement.

We first point out that the language of Bankers Trust's 1993 settlement agreement with the receiver contemplates that any amount received from the Davis firm would be allocated to the November 15 and 21, and

---

4. Additionally, [t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1242 (9th Cir.1998) (citations omitted); *see also* 32B Am. Jur.2d *Federal Courts* § 2131, at 504 (Dollar amounts are judged not in comparison with the recovery in the best possible outcome, but rather in light of the strengths and weaknesses of the plaintiffs case.).

to the November 25 and 26 transactions.[5] The agreement explains that only amounts *not* allocated to losses arising out of the November 15 and 21 transactions would be applied to the $72 million "Loss" threshold. In other words, any amount paid by the Davis firm for losses which resulted from the November 15 and 21 transactions would not be counted toward the $72 million figure, but that amounts allocated to the November 25 and 26 transactions would. This arrangement corresponds to the district court's finding that any fault on the part of Bankers Trust relates to the November 25 and 26 transactions only.

Based on these terms, Bankers Trust was put on notice that any settlement agreement between plaintiffs and the Davis firm would likely allocate damages to the November 15 and 21, and to the November 25 and 26 transactions. Similarly, this language suggested to plaintiffs and the Davis firm that they *should* identify what amount of damages would be allocated to the November 15 and 21, and November 25 and 26 transactions. Plaintiffs and the Davis firm did exactly this when they allocated $471,030 to the November 25 and 26 transactions and approximately $1.5 million to "consequential damages, including, but not limited to administrative costs, borrowing costs, deferred project costs, legal fees, and interest," and to attorneys fees and expenses incurred as a result of the November 15 and 21 transactions.

Upon receipt of the proposed settlement agreement between plaintiffs and the Davis firm, the court's responsibility was to examine the proposed agreement to see what amount, if any, was allocated to the November 25 and 26 transactions and whether that amount would put plaintiffs' total recovery over the $72 million mark. The district court had no basis for examining the *amount* that the parties allocated to the transaction dates. Nor did the court have any basis for examining the amount allocated to consequential or other types of damages. This is because the 1993 settlement agreement in no way controlled the allocation of consequential dam-

ages or otherwise required that recovery of consequential damages be applied toward the $72 million "Loss." In fact, we recognized in our prior decision that plaintiffs had the right to bring claims against the Davis firm for consequential damages that were independent of any claims held by the receiver. *See City of Dubuque*, 519 N.W.2d at 789. As a result, plaintiffs and the Davis firm were free to allocate amounts to specific types of damages as they chose.

■ Indeed, the district court would have abused its discretion if it had modified the amounts allocated in the settlement agreement. This is because a court has no authority to rewrite the terms of the settlement agreement based on its perception of the merits of the settlement terms, *In re Prudential–Bache Energy Income Sec. Litig.*, 815 F.Supp. 177, 182 (E.D.La.1993), and cannot modify the terms of the settlement agreement; the court must approve or disapprove of the proposed settlement as a whole, *Ahearn v. Fibreboard Corp.*, 162 F.R.D. 505, 527 (E.D.Tex.1995). In any event, the allocation of the $2 million Davis firm settlement among the various transactions and items of damages seems generally consistent with the district court's prior allocation of liability concerning the Davis firm and Bankers Trust.

Adding the $471,030 that plaintiffs received from the Davis firm, as allocated to the November 25 and 26 transactions, to the amount already recovered by the Iowa Trust does not exceed the $72 million mark. The district court properly concluded that plaintiffs had not recovered more than $72 million allocated to the November 25 and 26 transactions, and thus Bankers Trust was not entitled to any portion of the proceeds of plaintiffs' settlement with the Davis firm. The fact that prior recoveries had not previously been allocated to specific dates and transactions is irrelevant because such allocation of damages only became an issue when Bankers Trust asserted its claim based on the language in the 1993 settlement agreement with the receiver.

---

**5.** It is important to remember that at the time of the 1993 Bankers Trust settlement, liability had not been apportioned between Bankers Trust and the Davis firm concerning the transactions on November 15 and 21 and November 25 and 26, 1991. The apportionment of fault for those transactions was made in the district court's January 1996 decision concerning plaintiffs' negligence and breach of contract claims against the Davis firm.

We find no merit in Bankers Trust's contention that plaintiffs acted in bad faith concerning the terms of plaintiffs' settlement agreement with the Davis firm. As noted above, Bankers Trust's 1993 settlement agreement with the receiver implied that any subsequent settlement between plaintiffs and the Davis firm would allocate damages to the transaction dates in question.

We have considered all assertions by Bankers Trust and find no merit in them.

### IV. Disposition.

We conclude that plaintiffs had good cause for settling their claims against the Davis firm and that the terms of the settlement agreement are fair and reasonable. We thus conclude that the district court properly exercised its discretion in approving the settlement agreement. We further conclude that Bankers Trust is not entitled to a refund concerning the $4 million it paid to the receiver pursuant to the 1993 settlement agreement. Accordingly, the district court properly overruled Bankers Trust's objections to the settlement agreement. We affirm the judgment of the district court approving the settlement agreement between plaintiffs and the Davis firm.

**AFFIRMED AND REMANDED.**