# IN THE COURT OF APPEALS OF IOWA

No. 16-1513
Filed July 6, 2017

**MARY PATRICIA ZABER, as successor in interest to J. Thomas Zaber, on behalf of herself and all others similarly situated,**
    Plaintiff-Appellee,

**vs.**

**CITY OF DUBUQUE, IOWA,**
    Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, David P. Odekirk, Judge.


        The City of Dubuque appeals from the district court's ruling ordering the remaining funds from a class action settlement agreement be distributed equally among four *cy pres* recipients.  **AFFIRMED.**



        Ivan T. Webber and James R. Wainwright of Ahlers & Cooney, P.C., Des Moines, for appellant.

        Richard A. Davidson of Lane & Waterman L.L.P., Davenport, for appellee.


        Heard by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

The City of Dubuque appeals from the district court's ruling ordering the remaining funds held in an escrow account from a class action settlement agreement be distributed equally among four charitable organizations serving Dubuque residents as *cy pres* recipients. The City argues the district court should have ordered the funds be returned to the City because doing so would serve the best interests of the class, *cy pres* is not appropriate in this case, the Iowa Rules of Civil Procedure provide the funds should be returned to the City, and, alternatively, even if *cy pres* were appropriate here, the City is the best c*y pres* recipient. Upon our review, we affirm.

### I.       Background Facts and Proceedings

In 1993, the residents of Dubuque voted to allow their city council to authorize franchise fees for gas and electric utility services. In 2003 and 2004, the Dubuque City Council adopted ordinances requiring utility companies servicing the City to pay to the City a fee of two percent of the gross revenue from the sale of gas and electricity to customers within Dubuque. The utility companies then passed the two-percent fee onto their customers in their bills. Subsequently, the ordinances were amended to provide for a franchise fee of three percent for gas and electric utilities.

On September 5, 2006, J. Thomas Zaber[1] filed a class action suit against the City of Dubuque, alleging the City had collected an illegal tax from its residents who had paid franchise fees for gas and electric utilities and cable

---

[1] J. Thomas Zaber is now deceased. His wife, Mary Zaber, has been substituted as the class representative.

television services in excess of the reasonable cost of regulating these services. *See Zaber v. City of Dubuque*, 789 N.W.2d 634, 636–37 (Iowa 2010). Zaber relied on the Iowa Supreme Court's decision in *Kragnes v. City of Des Moines* (*Kragnes I*), 714 N.W.2d 632, 642–43 (Iowa 2006), which held franchise fees imposed by the City of Des Moines for gas and electric utility services constituted an illegal tax when the fees exceeded "the reasonable costs of inspecting, licensing, supervising, or otherwise regulating the activity that is being franchised."

The district court granted the City's partial summary judgment motion requesting dismissal of Zaber's claim for a refund of cable television fees. *Zaber*, 789 N.W.2d at 637. The supreme court affirmed the district court's decision with regard to the cable television fees on interlocutory appeal and remanded for further proceedings with regard to the claim for a refund of gas and electric utility fees. *Id.* at 656.

On July 23, 2014, the parties entered into a settlement agreement in order to avoid the uncertainty and cost of continued litigation. The agreement covered utility customers in Dubuque who paid utilities franchise fees to the City between September 5, 2001 and May 25, 2009. The agreement provided Dubuque would pay $2,600,000 into an escrow fund to be divided among class members who paid franchise fees during the relevant period.

The agreement left two issues to be determined by the court: (1) whether class members should be required to submit a claim form in order to receive a refund; and (2) whether *cy pres* recipients, the City, or the state, should receive

the remaining funds, if any, after all claims had been paid.[2] After a hearing on the first issue in August 2014, the court ordered that each class member seeking a refund must submit a claim form in order to receive a payment instead of receiving a refund automatically.

On August 28, 2015, the court entered a final order and judgment approving the class action settlement, concluding the terms of the settlement agreement were "fair, reasonable and adequate and in the best interest of" both the class and the City.

On May 12, 2016, the court entered a final distribution order approving a distribution schedule and directing the settlement administrator to make payments of claims to the class members. The court reserved jurisdiction to determine the final distribution of any funds remaining in the escrow account.

After all claims for refunds had been submitted and payments made, a total of $601,985.46 remained unclaimed in the escrow account.[3] On May 31, 2016, the class filed a motion to distribute the remaining funds to four charitable organizations serving Dubuque residents as *cy pres* recipients, including Operation: New View Community Action Agency, the Iowa Legal Aid Northeast

---

[2] The settlement agreement provides:

> To the extent that the Settlement Administrator, after exercising reasonable diligence to locate each Class Member, is unable to distribute payment to each Class Member for any reason . . . then, in that event, after the payment of all claims, any remaining funds in the Escrow Account shall be awarded, as *cy pres* to the *Cy Pres* Recipients, to the City or to the State of Iowa, as determined by the Court following application by one or both of the parties, notice of hearing, and hearing.

The agreement further defines "*Cy Pres* Recipient" as "such charitable institutions as hereafter may be determined by the Court to be appropriate recipients."

[3] The record shows there might be an estimated additional $64,500 remaining in the escrow account if not all of the claiming class members cashed their refund checks within 120 days of their issuance.

Iowa Regional Office, the Community Foundation of Greater Dubuque, and United Way of Dubuque Area Tri-States.[4] The City resisted the class's motion and requested that the remaining funds be returned to it because the city council had already directed that any money returned from the settlement escrow account be used to reduce the judgment bond the City had issued to fund the settlement account.

The court held an evidentiary hearing on the class's motion and subsequently ordered the remaining funds be equally divided among the four *cy pres* recipients named in the class's written motion. In its order, the court found "the express language of the settlement agreement does supplant the language which would other[wise] apply under Iowa Rule of Civil Procedure 1.274(3)." The court also found "the group of persons who paid illegal franchise fees are not one and the same with the persons who pay property taxes. Therefore, a return of the remaining funds to the City would not reasonably approximate the interests that were pursued by the class, despite some overlap." The court next determined Dubuque was not an appropriate *cy pres* recipient because "the City will merely be using the remaining funds to reduce a debt obligation which benefits property tax payers generally without advancing the interests specific to the class." Additionally, the court found the class's alternative suggestion that the court distribute the remaining funds to the City upon the condition that the City use the funds to reduce future electric and gas utility franchise fees in an equivalent amount was inappropriate because it "would be unnecessarily

---

[4] At the hearing on the motion in July, however, Zaber testified she personally preferred the remaining funds be distributed to other various charitable organizations serving the residents of Dubuque but still including Operation: New View Community Action Agency.

burdensome to the City and confusing to the persons subject to the fees." The court concluded the *cy pres* recipients proposed in the class's written motion were "most consistent and best represent[] the interest pursued by the class."

The City appeals.

## II.      Scope and Standard of Review

The parties dispute the standard of review to be applied here. The City contends we should review the district court's decision de novo. S*ee Kragnes v. City of Des Moines* (*Kragnes II*), 810 N.W.2d 492, 498 (Iowa 2012). The class asserts the standard of review is for an abuse of discretion. *See City of Dubuque v. Iowa Trust*, 587 N.W.2d 216, 220 (Iowa 1998).

Under federal law, appellate courts that have addressed this issue review a district court's decision to distribute unclaimed funds to *cy pres* recipients for an abuse of discretion. *See, e.g.*, *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1071 (8th Cir. 2015) (citing *Powell v. Ga.-Pac. Corp.*, 119 F.3d 703, 706 (8th Cir. 1997)); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011); *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011). We find a similar abuse-of-discretion standard applies here. *See Iowa Trust*, 587 N.W.2d at 220. "An abuse of discretion occurs when 'the court exercise[s] [its] discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000) (alterations in original) (citation omitted). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Id.*

"[W]e review the interpretation of our rules of civil procedure for correction of errors at law." *Jack v. P & A Farms, Ltd.*, 822 N.W.2d 511, 515 (Iowa 2012).

### III.    Analysis

The City claims the district court should have ordered the remaining funds in the settlement escrow account be returned to it because doing so is in the best interests of the class.[5]  The City complains failure to return the funds to it only harms the members of the class because the class members will ultimately be responsible for paying off the debt the City has incurred in order to fund the settlement in this action; thus, reduction of the City's debt through the return of the remaining funds is in the best interests of the class.[6]  Additionally, the City contends *cy pres* distributions in class action settlements are not appropriate because such an award is not supported by Iowa case law and has been questioned by several federal courts.  It further complains the charitable organizations selected are not appropriate *cy pres* recipients because they focus their aid on helping low-income residents of Dubuque and there is no evidence that low-income residents are members of the class or that low-income residents are representative of the population of Dubuque or the business and commercial

---

[5] In *Iowa Trust*, the Iowa Supreme Court followed federal court precedent and held that, in deciding whether to approve a settlement agreement, the district court shall "independently and objectively analyze the evidence and circumstances before it . . . to determine whether the settlement is in the best interest of those whose claims will be extinguished."  587 N.W.2d at 222 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768, 785 (3d Cir. 1995)).  That is, "the court must determine whether the settlement is fair, reasonable and adequate."  *Id.*  Here, the district court entered a final order approving the class action settlement in August 2015, finding the terms of the settlement were "fair, reasonable and adequate and in the best interest of" both parties.  Neither party appealed this ruling.  The City cannot now argue the district court abused its discretion in approving the parties' settlement agreement.

[6] The City alleges the total cost of the settlement to the City is $3,754,990.78, which includes $263,679.68 in escrow and administration fees and $1,563,795.33 in interest on the twenty-year bond the City issued to fund the settlement escrow account.

entities who paid the illegal franchise fees. Alternatively, the City argues it is the best *cy pres* recipient because the City will use the money to directly benefit its residents. Finally, the City claims Iowa Rule of Civil Procedure 1.274(3) requires the court to distribute any unclaimed funds to it, as the defendant, or to the State of Iowa.

The class argues the district court did not abuse its discretion in ordering the remaining funds be distributed to local charities because the settlement agreement gave the court discretion to award the funds to *cy pres* recipients, the City, or the state. The class contends the record contains substantial evidence to support the findings of the district court and the City has failed to prove the district court's grounds and reasons are clearly untenable or unreasonable.

The issue of whether a district court can utilize the *cy pres* doctrine[7] to distribute unclaimed funds from a class action settlement to *cy pres* recipients is one of first impression in Iowa, yet numerous federal courts have addressed it.

---

[7] "The *cy pres* doctrine 'takes its name from the Norman French expression, *cy pres comme possible*, which means "as near as possible."'" *Nachshin*, 663 F.3d at 1038 (quoting *In re Airline Ticket Comm'n Antitrust Litig.* (*Airline II*), 307 F.3d 679, 682 (8th Cir. 2002)). "The doctrine originated to save testamentary charitable gifts that would otherwise default." *Id.* "The *cy pres* doctrine allows a court to modify a trust to best carry out the testator's intent—that is, to effectuate the 'next best' use of the gift." *Id.* "In the context of class action settlements, a court may employ the *cy pres* doctrine to 'put the unclaimed fund to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class.'" *Id.* (quoting *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007)). "Courts generally have approved *cy pres* distributions in two circumstances." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 171 (3d Cir. 2013). "First, many courts allow a settlement that directs funds to a third party when funds are left over after all individual claims have been satisfied. . . . Second, some courts allow a settlement to require a payment only to a third party, that is, to provide no recovery at all directly to class members." *Id.* at 171–72 (quoting Principles of the Law of Aggregate Litig.: *Cy Pres* Settlements § 3.07 cmt. a (Am. Law Inst. 2010) [hereinafter ALI Principles]). Courts will choose the latter option when it is not feasible to make direct distributions to class members. *See Fraley v. Batman*, 638 F. App'x 594, 599 (9th Cir. 2016) (Bea, J., dissenting) ("[C]y pres should be used only if: (1) it is infeasible to distribute the money to class members directly, such as when identifying the members of the class is exceedingly difficult or costly." (citing ALI Principles § 3.07)).

*See, e.g., Klier*, 658 F.3d at 473 ("When modern, large-scale class actions are resolved via settlement, money often remains in the settlement fund even after initial distributions to class members have been made because some class members either cannot be located or decline to file a claim. Federal district courts often dispose of these unclaimed f[u]nds by making what are known as *cy pres* distributions."). We recognize, however, "[*c*]*y pres* distributions of unclaimed funds have been controversial in the [federal] courts of appeals." *Powell*, 119 F.3d at 706; *see also Marek v. Lane*, 134 S. Ct. 8, 9 (2013) (noting the growing use of *cy pres* remedies in class action settlements and recognizing the potential need for the U.S. Supreme Court "to clarify the limits on the use of such remedies").

We must first consider the threshold issue of whether the district court erred in determining "the express language of the settlement agreement does supplant the language which would other[wise] apply under Iowa Rule of Civil Procedure 1.274(3)." Our rules of civil procedure "have the force and effect of law." *City of Sioux City v. Freese*, 611 N.W.2d 777, 779 (Iowa 2000). "Consequently, we interpret rules in the same manner we interpret statutes." *Id.* (citation omitted). "We look to both the language [of the rule] and the purpose behind [it]." *Jack*, 822 N.W.2d at 515.

Iowa Rule of Civil Procedure 1.274(3)(e) provides:

> The court shall determine what amount of the funds available for the payment of the judgment cannot be distributed to members of the class individually because they could not be identified or located or because they did not claim or prove the right to money apportioned to them. The court after a hearing shall distribute that amount, in whole or in part, to one or more states as unclaimed property or to the defendant.

The rule also provides courts shall consider several criteria in determining what amount, if any, of remaining funds is to be distributed to the defendant, including:

> (1) Any unjust enrichment of the defendant.
> (2) The willfulness or lack of willfulness on the part of the defendant.
> (3) The impact on the defendant of the relief granted.
> (4) The pendency of other claims against the defendant.
> (5) Any criminal sanction imposed on the defendant.
> (6) The loss suffered by the plaintiff class.

Iowa R. Civ. P. 1.274(3)(f). Additionally, "[t]he court, in order to remedy or alleviate any harm done, may impose conditions respecting the use of the money distributed to the defendant." Iowa R. Civ. P. 1.274(3)(g).

"Settlement agreements are essentially contracts, and general principles of contract law apply to their creation and interpretation." *Sierra Club v. Wayne Weber LLC*, 689 N.W.2d 696, 702 (Iowa 2004). Our law recognizes the parties' freedom to contract. *See State v. Baldon*, 829 N.W.2d 785, 792 (Iowa 2013) ("[C]ourts enforce contracts because they are a product of the free will of the parties who, within limits, are permitted to define their own obligations."); *Walker v. Am. Family Mut. Ins. Co.*, 340 N.W.2d 599, 601 (Iowa 1983) (recognizing parties' freedom to contract and requiring the court to weigh this right when considering whether to invalidate a contract on public policy grounds). Indeed, "[t]he law favors settlement of controversies and, accordingly, . . . 'voluntary settlements of legal disputes should be encouraged, with the terms of settlements not inordinately scrutinized.'" *Fees v. Mut. Fire & Auto. Ins. Co.*, 490 N.W.2d 55, 58 (Iowa 1992) (citation omitted); *see also Iowa Trust*, 587 N.W.2d at 223 ("[A] court has no authority to rewrite the terms of the settlement agreement

based on its perception of the merits of the settlement terms and cannot modify the terms of the settlement agreement." (citation omitted)).

The settlement agreement reached by the parties and approved by the district court provides:

> To the extent that the Settlement Administrator, after exercising reasonable diligence to locate each Class Member, is unable to distribute payment to each Class Member for any reason . . . then, in that event, after the payment of all claims, any remaining funds in the Escrow Account shall be awarded, as *cy pres* to the *Cy Pres* Recipients, to the City or to the State of Iowa, as determined by the Court following application by one or both of the parties, notice of hearing, and hearing.

The parties agreed to be bound by the terms of the settlement agreement, which provided the district court with discretion to distribute any remaining funds in the escrow account to *cy pres* recipients after an evidentiary hearing. *See Klier*, 658 F.3d at 475–76 (noting "the court cannot modify the bargained-for terms of the settlement agreement" once the agreement's terms have been approved because "[t]he terms of the settlement agreement are always to be given controlling effect"). *But see In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 38 (1st Cir. 2012) (expressing concerns over the parties agreeing to give discretion to the district court to distribute unclaimed funds from a class action settlement); *see also In re BankAmerica*, 775 F.3d at 1066; *Nachshin*, 663 F.3d at 1040. We conclude the district court did not err in determining the parties' settlement agreement controlled even when the language of rule 1.274(3) would otherwise have applied.[8]

---

[8] Although the district court did not explicitly and individually address each of the factors listed in rule 1.274(3)(f), the findings of the court show it appropriately considered whether the remaining funds should have been distributed to the City.

We now turn to the question of whether the district court abused its discretion in distributing the remaining funds to the four charitable organizations as *cy pres* recipients. For decades "federal district courts have disposed of unclaimed class action settlement funds after distributions to the class by making '*cy pres* distributions.'" *In re BankAmerica*, 775 F.3d at 1063. *But see id.* (noting many circuit courts have "criticized and severely restricted the practice." (quoting *Powell*, 119 F.3d at 706)). "In such a case, the unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *Airline II*, 307 F.3d at 682; *see also In re Baby Prods.*, 708 F.3d at 169 (permitting *cy pres* distributions but finding them "inferior to direct distributions to the class because they only imperfectly serve the purpose of the underlying causes of action—to compensate class members"); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990) (holding a *cy pres* distribution "will be rejected when the proposed distribution fails to provide the 'next best' distribution"); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 179, 186 (2d. Cir. 1987). Such distributions must also account for "the objectives of the underlying statutes," and must "target the plaintiff class" and "provide reasonable certainty that [class] member[s] will be benefitted." *Nachshin*, 663 F.3d at 1040.

The American Law Institute (ALI) has published the following recommendation regarding *cy pres* distributions:

> A court may approve a settlement that proposes a cy pres remedy . . . . The court must apply the following criteria in determining whether a cy pres award is appropriate:

> (a) If individual class members can be identified through reasonable effort, and the distributions are sufficiently large to make individual distributions economically viable, settlement proceeds should be distributed directly to individual class members.
>
> (b) If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.
>
> (c) If the court finds that individual distributions are not viable based upon the criteria set forth in subsections (a) and (b), the settlement may utilize a cy pres approach. The court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class. If, and only if, no recipient whose interests reasonably approximate those being pursued by the class can be identified after thorough investigation and analysis, a court may approve a recipient that does not reasonably approximate the interests being pursued by the class.

ALI Principles § 3.07. The ALI further provides in commentary that a *cy pres* distribution of unclaimed funds should be made "only when it is not feasible to make further distributions to class members and the third party's interests approximate those of the class members." *Id.* § 3.07 cmt. a; *see also Klier*, 658 F.3d at 475 ("Where it is still logistically feasible and economically viable to make additional pro rata distributions to class members, the district court should do so, except where an additional distribution would provide a windfall to class members with liquidated-damages claims that were 100 percent satisfied by the initial distribution." (footnotes omitted)). In other words, "[a] *cy pres* distribution . . . arises only if it is not possible to put those funds to their very best use: benefitting the class members directly." *Klier*, 658 F.3d at 475; *see also In re Lupron*, 677 F.3d at 34–35 (approving *cy pres* distributions when all class

members who had submitted claims had already been fully compensated for their damages by prior direct distributions). Here, the record is unclear whether class members received a full refund of the amount they paid in illegal franchise fees, but the parties agreed to and the district court approved a distribution schedule providing "that payment should be made to 27,537 class members in the aggregate amount of $966,809.87." Furthermore, the class did not request a further direct distribution to its members, but rather, it requested that any remaining funds in the escrow account be distributed to *cy pres* recipients. Based on these facts, we conclude a *cy pres* distribution of the remaining unclaimed funds was permissible in this case.

We next consider whether a *cy pres* distribution was appropriate here or whether the funds should have been returned to the City or escheated to the state. In *In re Baby Products*, the Third Circuit recognized three options for distributing funds remaining after direct distributions had been made to class members: "reversion to the defendant, escheat to the state, or distribution of the funds *cy pres*." 708 F.3d at 172; *see also Powell*, 119 F.3d at 706 (acknowledging "four ways in which courts have distributed unclaimed funds [from class action settlements]: *Pro rata* distribution to the class members, reversion to the defendant, escheat to the government, and *cy pres* distribution").

A comment to the ALI's recommendation states "[c]y pres is preferable . . . [over] return[ing] the remaining funds to the defendant" because doing so "undermine[s] the deterrence function of class actions and the underlying substantive-law basis of the recovery by rewarding the alleged wrongdoer." ALI Principles § 3.07 cmt. b; *see also In re Baby Prods.*, 708 F.3d at 172 ("Reversion

to the defendant risks undermining the deterrent effect of class actions by rewarding defendants for the failure of class members to collect their share of the settlement."). *But see Six Mexican Workers*, 904 F.2d at 1308 (stating "reversion to the defendant may be appropriate when deterrence is not a goal of the statute or is not required by the circumstances"). "Escheat to the state preserves the deterrent effect of class actions, but it benefits the community at large rather than those harmed by the defendant's conduct." *In re Baby Prods.*, 708 F.3d at 172. "*Cy pres* distributions also preserve the deterrent effect, but (at least theoretically) more closely tailor the distribution to the interests of class members, including those absent members who have not received individual distributions." *Id.*

The City argues reversion does not undermine the deterrent effect in this case because it was actually the residents of Dubuque, including class members, who authorized the illegal franchise fees at issue here. Further, the City claims the franchise fees were legal when they were imposed, it was not until after the supreme court decided *Kragnes I* that the amount of franchise fees involved became illegal, and the state legislature has since ratified the City's actions in imposing the three-percent fees. Thus, the City claims it cannot have committed any wrongdoing and should not be punished. Alternatively, the City contends if the court concludes a *cy pres* distribution is appropriate here, the City itself is the best *cy pres* recipient.

The district court determined "a return of the remaining funds to the City would not reasonably approximate the interests that were pursued by the class" because "the group of persons who paid illegal franchise fees are not one and

the same with the persons who pay property taxes." The district court further found the City was not an appropriate *cy pres* recipient because "the City will merely be using the remaining funds to reduce a debt obligation which benefits property tax payers generally without advancing the interests specific to the class." Additionally, the court found the state was "not an appropriate recipient of the remaining funds."[9] Instead, the court found distributing the remaining funds equally among four charitable organizations serving Dubuque residents was "most consistent and best represents the interest pursued by the class." The court ordered the funds distributed:

> 1. One-fourth to Operation: New View Community Action Agency for the benefit of low-income persons in the City of Dubuque with utility bills assistance;
> 2. One-fourth to Iowa Legal Aid Northeast Iowa Regional Office for ongoing annual assistance to the Dubuque Office of Iowa Legal Aid for the benefit of Dubuque City residents;
> 3. One-fourth to the Community Foundation of Greater Dubuque for ongoing annual assistance to programs or projects benefiting residents of Dubuque; and
> 4. One-fourth to the United Way of Dubuque Area Tri-States for the benefit of programs or projects benefiting residents of Dubuque.

Under the circumstances, we conclude the district court did not abuse its discretion in ordering a *cy pres* distribution of the remaining funds in the settlement escrow account to the four charitable organizations. Accordingly, we affirm.

**AFFIRMED.**

---

[9] On appeal, neither party urges the funds should have been distributed to the state.