# IN THE COURT OF APPEALS OF IOWA

No. 20-0313
Filed October 21, 2020

IN RE THE MARRIAGE OF JOANNA D. HEIAR
AND AARON M. HEIAR

Upon the Petition of
JOANNA D. HEIAR,
        Petitioner-Appellee,

And Concerning
AARON M. HEIAR,
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Hardin County, John J. Haney, Judge.

A father appeals the denial of his request for joint physical care or, in the alternative, additional visitation. He also appeals provisions of the decree allocating child expenses. After the parties' counselor failed to testify, the father asserts the district court interfered with his presentation of evidence. **AFFIRMED AS MODIFIED AND REMANDED.**

Dorothy L. Dakin of Kruse & Dakin, L.L.P., Boone, for appellant.

Stephen B. Jackson, Sr. of Shuttleworth & Ingersoll, Cedar Rapids, for appellee.

Considered by Doyle, P.J., and Mullins and Greer, JJ.

**GREER, Judge.**

Aaron Heiar appeals several components of the decree dissolving his and Joanna Heiar's marriage. He asserts he should have been awarded joint physical care or, in the alternative, he should have additional visitation. Aaron disputes the allocation of expenses for the children as well. As for the trial issues, he contends the district court abused its discretion by interfering with the testimony of the couple's therapist, who then refused to testify, and that the district court afforded Joanna and her witnesses more creditability than they deserved. Joanna requests an award of appellate attorney fees.

**Background Facts and Proceedings.**

Aaron and Joanna met in March 2000, and they married in May 2004. After Aaron graduated from medical school in 2003, they moved to Ankeny for Aaron's residency where Joanna, who has a bachelor's degree in education,[1] worked as an elementary school teacher. At the end of Aaron's residency, the two moved to Iowa Falls. Together, they have three minor children: C.J.H., born in 2010, and twins, R.J.H. and W.M.H., born in 2012. In 2010, while the couple was expecting their first child, Joanna left her paid employment to be a stay-at-home mom while Aaron continued his work as a doctor of osteopathic medicine. In 2016, Joanna reentered the workforce and continued her previous occupation as an elementary school teacher in Iowa Falls. From the time the children were born, Joanna provided for the majority of their physical, educational, and developmental needs

---

[1] Joanna graduated from Iowa State University with a degree in education in 2004.

and handled most of the household duties. By all accounts all three children are healthy, happy, and well-adjusted and they do well in school.

The couple separated, and Joanna petitioned for dissolution in October 2018, requesting the court award joint legal custody of the children, grant her physical care, and determine appropriate child support. That same month, Aaron filed an application for reconciliation counseling. In response, the court ordered counseling with Elizabeth Herrington, a licensed mental-health therapist, at Christian Counseling. Aaron and Joanna met with Herrington together seven times for counseling. Herrington met with the children four times with both parents present. Joanna met with Herrington alone once; Joanna claims Herrington diagnosed her with post-traumatic stress disorder during that meeting. After a hearing on temporary matters in November 2018, the parties were awarded temporary joint legal custody and Joanna was temporarily granted physical care.

On January 9, 2019, Joanna signed an authorization to release for Herrington's records. This release stated in relevant part,

> I understand the information is being disclosed and may be used only for legal and/or litigation purposes relating to claims and/or suit against Aaron Heiar and arising out of incidents. . . . I also understand that if I revoke, the revocation will take effect on the day it is received by the entity from whom disclosure is sought in writing.

Aaron called Herrington as a witness at the dissolution trial. During Herrington's testimony at trial, Joanna revoked her consent orally. Herrington, concerned with the appropriateness of her testimony after this oral revocation, hesitated to continue. When asked by the court if her hesitation meant she wished to consult an attorney on whether she should continue testifying, Herrington answered yes and did not finish her testimony.

Trial took place over four days in October and November of 2019 at which point Joanna was forty years old and Aaron was forty-two. Both parties are healthy, though Aaron has impaired hearing which requires the use of hearing aids. At trial, both Aaron and Joanna alleged defects in the other's character and parenting skills. Aaron claimed Joanna had a cohort of her friends and family spy on him and report his every movement back to her. Aaron also expressed fear Joanna intended to take the children away and move out of state or out of the country with another man, whom Aaron claimed was Joanna's paramour. Joanna asserted Aaron was irrationally angry before and after work to the extent he would yell and punish the children for little or no reason, seethe if food was not prepared by Joanna on time, and spend only twenty minutes or less with the children at night, preferring to sit downstairs watching television on headphones without disruption. Joanna also alleged Aaron financially abused her, claiming she was given only $27.00 a month to spend at her own discretion.

In January 2020, the district court granted the parties joint legal custody and Joanna was awarded physical care. In addition, Aaron was ordered to pay $2434.45 monthly and half the children's expenses for child support and $1000.00 per month for thirty-six months as alimony. Aaron's visitation schedule set out by the trial court was as follows:

> (a) Weekends: From the time school is dismissed or 3:30 p.m. if school is not in session until 5:00 p.m. on Sundays on alternating weekends.
> (b) Weekdays: From the time school is dismissed or 3:30 p.m. if school is not in session until 7:30 p.m. on each Tuesday.
> (c) The regular schedule shall continue on the alternating weekend schedule that has been followed since entry of the Temporary Order entered November 12, 2018.
> . . . .

(g) The parties shall alternate summer vacation with the children on a weekly basis. If the parties are unable to otherwise agree, said alternating summer visitation shall begin for Aaron on the first Friday following dismissal of school for the summer at 6:00 p.m. with the parties alternating parenting time weekly thereafter until one week prior to the start of school . . . .

. . . .

(i) Aaron may have such additional visitation as the parties may otherwise agree.

Aaron filed a motion to enlarge, amend, and modify on February 4, 2020. Aaron asked the court to reconsider granting Joanna physical care and grant joint physical care instead. In the alternative, he requested the court modify the visitation schedule to grant him more time with the children and to limit his financial obligations solely to the child support amount without responsibility for any shared expenses. The court summarily denied the motion. Aaron appeals.

**Standard of Review.**

"Marriage dissolution proceedings are equitable proceedings." *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). "Thus, the standard of review is de novo." *Id.*; *accord* Iowa R. App. P. 6.907. "Although we give weight to the factual findings of the district court, we are not bound by them." *Mauer*, 874 N.W.2d at 106; *accord* Iowa R. App. P. 6.904(3)(g). "But we will disturb a district court determination only when there has been a failure to do equity." *Mauer*, 874 N.W.2d at 106.

The trial court has the advantage of listening to and observing the parties and witnesses and is in a better position to weigh the credibility of witnesses than the appellate court, which is limited to a written record. *See In re Marriage of Zebecki*, 389 N.W.2d 396, 398 (Iowa 1986).

We review evidentiary rulings and other "matters relating to the course and conduct of a trial, not regulated by statute," for abuse of discretion. *In re Marriage of Ihle*, 577 N.W.2d 64, 67 (Iowa Ct. App. 1998); *accord In re Marriage of Abkes*, 460 N.W.2d 184, 186 (Iowa Ct. App. 1990) (considering whether the trial court abused its discretion in preventing child from testifying in dissolution proceedings). "An abuse of discretion occurs when the district court exercises its discretion 'on grounds or for reasons that are clearly untenable or to an extent clearly unreasonable.'" *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484 (Iowa 2012) (citation omitted).

**Evidentiary Issues regarding Mental-Health Therapist.**

We first consider the evidentiary issues raised by Aaron. He argues the district court abused its discretion by making statements that resulted in the parties' counselor, Herrington, fearing testifying. Joanna argues Aaron did not sufficiently preserve the error claimed on appeal. After some discussion between the court and the counselor, the counselor requested the opportunity to consult with legal counsel about disclosing client confidences once Joanna revoked her consent. No party attempted to recall her or ask that the record remain open for her testimony. Additionally, the only reference to Herrington in the motion to enlarge was *"Why did Joanna object to [Harrington] testifying? What was Joanna trying to cover up?"*

To preserve an issue for appellate review, it must be raised and then decided at the trial level. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (citing *Metz v. Amoco Oil Co.*, 581 N.W.2d 597, 600 (Iowa 1998))). "When a district

court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal." *Id.* (citing *Benavides v. J.C. Penny Life Ins. Co.*, 539 N.W.2d 352, 356 (Iowa 1995)).

But even on the merits, it would not matter after all.  After Herrington took the stand, Joanna orally revoked her consent to the release of her medical records and to Herrington's testimony, previously supplied by a written and signed waiver. Once the issue of confidentiality was raised, Herrington became concerned with the appropriateness of her testimony, as did the trial judge:

> THE COURT: I had a concern that I shared with your attorneys about a licensed social worker testifying when there's been a revocation of a consent that has been previously made as well as reasserted today.  And I shared with your attorneys that I was—I was a little uncomfortable with that.
> . . . .
> HERRINGTON: I'm not sure if I want to continue if this could somehow be inappropriate.  So I'm asking you, Judge.
> . . . .
> THE COURT: All right.  And so, Ms. Herrington, are you telling me with the revocation of the consent that you've just been made aware of that you're not comfortable testifying regarding any work you may or may not have done with these folks?  Is that what you're telling me?
> HERRINGTON: I'm uncomfortable, due to your words, sir—
> THE COURT: What—
> HERRINGTON: —Judge.
> THE COURT: What do you mean?
> HERRINGTON: Am I doing anything that would be inappropriate?
> THE COURT: Are you wishing to seek counsel in terms of whether you should testify?  Is that what you're saying to me?
> HERRINGTON: Yes.  I don't understand.

The judge allowed Herrington the opportunity to seek legal advice and stated the record could be kept open if either party wished the court to do so to allow Herrington to be recalled to give testimony after she spoke with legal counsel.

Neither party asked the court to keep the record open, and Herrington was never recalled to testify—though her records were admitted subject to objections. "[E]rror preservation rules require parties to alert the district court 'to an issue at a time when corrective action can be taken.'" *Estate of Poll v. Poll*, No. 18-0254, 2019 WL 2374391, at *5 (Iowa Ct. App. June 5, 2019) (quoting *Top of Iowa Co-op. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000)). When the court asked for his position on Herrington stepping down to consult counsel on the matter, Aaron's counsel answered, "I guess if [Herrington] wants." Aaron failed to adequately alert the court to the issue by not objecting to the court's questioning or statements. Therefore, we find no error was preserved and in any event, we find the district court did not abuse its discretion in questioning the witness given the revocation of the release. *See* Iowa R. of Evid. 5.614(b) ("When necessary, the court may examine a witness regardless of who calls the witness.")

**Credibility of Joanna and Her Witnesses.**

Aaron faults the district court for failing to see through the motivations of Joanna and her witnesses to demean his character and bolster her character. We review the record with fresh eyes but still give weight to the district court's credibility findings. *In re Marriage of Vrban,* 359 N.W.2d 420, 423 (Iowa 1984) ("[The district court] is greatly helped in making a wise decision about the parties by listening to them and watching them in person. In contrast, appellate courts must rely on the printed record in evaluating the evidence. We are denied the impression created by the demeanor of each and every witness as the testimony is presented."). And after our review, we appreciate the interplay that occurs during a trial to cast aspersions on each side. With that in mind, while we may have made other

findings if in the district court's seat, we were not there and we find nothing that impacts a change in the custody conclusions as detailed by the court.

**Child Custody Issues.**

The district court made detailed findings—the full decree is fifty-three pages. With such detailed and supported findings, our comfort in the result is enhanced because we give deference to the district court's ability to see and hear the witnesses. *See McKee v. Dicus*, 785 N.W.2d 733, 739 (Iowa Ct. App. 2010). After our de novo review, we affirm the district court's physical-care determination.

At the onset, these parties agreed they should share joint legal custody but both sought physical care and, in the alternative, Aaron suggested they share joint physical care. "Where both parents are suitable caregivers," though, the propriety of joint physical care will usually turn on "four key considerations: (1) stability and continuity of caregiving; (2) the ability of [the parents] to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) the degree to which parents are in general agreement about their approach to daily matters." *In re Marriage of Geary*, No, 10-1964, 2011 WL 2112479, at *2 (Iowa Ct. App. May 25, 2011) (citing *In re Marriage of Hansen*, 733 N.W.2d 683, 696–99 (Iowa 2007)). But the ultimate objective of a physical-care determination is to place the children "in the environment most likely to bring [them] to healthy physical, mental, and social maturity." *See in re Marriage of Murphy*, 592 N.W.2d 681, 683 (Iowa 1999) (citation omitted); *In re Marriage of Courtade*, 560 N.W.2d 36, 38 (Iowa Ct. App. 1996). The best-interest determination is not based "upon perceived fairness to the [parents]." *Hansen*, 733 N.W.2d at 695. If the court denies the request for joint physical care, the determination shall be accompanied by specific findings of

fact and conclusions of law that the awarding of joint physical care is not in the best interest of the children. Iowa Code § 598.41(5)(a) (2018).

As observed by the district court, and we concur, both parents are exceptional. But the factors tipping the scale involved Joanna's historical role as the primary day-to-day caretaker and Aaron's attitude. First, from birth to the current proceeding, Joanna served as the primary caretaker. Granted, Aaron increased his time spent with the children after the separation in October 2018, but historically, his role has been breadwinner and not caretaker. And over the years while Joanna provided the majority of caretaking, the children were happy, well-adjusted, healthy, and thriving. Second, on the question of joint physical care, the district court found significant "Aaron's lack of insight into his actions, attitudes and behavior during the marriage, his unflinching inability to admit even the slightest mistake or personal flaw at trial, as well as his unyielding posturing during the course of these proceedings." So, the district court fashioned the custody arrangement with the historical roles of the parties in mind and with an understanding of how Aaron's inflexibility and behaviors might impact the arrangement long-term. *See Hansen,* 733 N.W.2d at 697 (finding the approximation rule offers an objective factor for the court to consider with the focus on the historic patterns of caregiving because it ensures the decision is "rooted in the past practices of the individual family").

Here, the district court found:

Based upon the record presented, and with full and complete consideration of the factors outlined above, the court finds that shared physical custody is not in the long-term best interests of the parties' children. This finding is based upon the court's consideration of the factors set forth above, including but not limited to the record

> developed herein; the parties respective work schedules; Joanna's role as primary caretaker for the children during the marriage and since the separation; the fact that the children are healthy, happy and well-adjusted, and having observed the parties respective demeanor and disposition at trial. The custodial arrangement described below is the best available for the particular circumstances of this case and the court believes it will be in the children's long-term best interests.

Under this record, we agree with the physical-care award fashioned by the district court.

**Additional Visitation.**

The district court outlined a minimum visitation schedule for Aaron and the children. It allowed for every other weekend, a weeknight visitation, typical holiday visits, and a liberal summer schedule where the summer vacation weeks are alternated. As a part of the decree, the district court noted: "Aaron may have such additional visitation as the parties may otherwise agree." When two good parents are involved, the physical care parent—with the best interests of the children at the forefront—knows open, flexible visitation generally benefits the children. We affirm the visitation schedule in the decree but emphasize that these are minimum guidelines and parents can certainly agree to expand time beyond what is ordered. *See In re Holub*, 584 N.W.2d 731, 733 (Iowa Ct. App. 1998) (noting successful parenting involves setting aside petty differences to act in the child's best interest).

**Payment of Children's Expenses.**

After awarding child support for the three children in the amount of $2,434.45 per month based on a three-year average of Aaron's income,[2] the district court also required him to pay half of these expenses for the minor children:

---

[2] Joanna's income is $43,613.04 annually, and the district court found the three-year average annual income for Aaron was $243,132.00.

a. School registration and book fees (through twelfth (12th) grade;

b. School lunch money;

c. Annual school supplies (book bags, pens, pencils, notebooks, folders, binders, calculators, protractors and all other school-related supplies) with a maximum school year per parent of $100;

d. School pictures and projects; projects $100 per parent per school year;

e. Clothing and shoes (maximum of $100 per month per parent)

f. Extracurricular activity enrollment fees and required supplies (gear, uniforms and shoes ($200 annually per parent).

"In Iowa, child support is calculated using the child support guidelines." *In re Marriage of Erpelding*, 917 N.W.2d 235, 245 (Iowa 2018); *accord* Iowa Code § 598.21B; Iowa Ct. R. 9.2. The purpose of the child support guidelines is to set an amount of support that will cover the normal and reasonable costs of supporting a child. *See* Iowa Code § 598.21B(2)(a) (stating "the court may order either parent or both parents to pay an amount reasonable and necessary for supporting the child"); Iowa Ct. R. 9.3(1) (stating the guidelines "will normally provide reasonable support"). The amount of support determined by the guidelines is designed to encompass the normal needs of a child, except for medical support and postsecondary education expenses. *In re Marriage of Okland*, 699 N.W.2d 260, 268 (Iowa 2005).

The expenses required by the district court to be split are those types of financial obligations normally incurred by other children and, thus, have been factored into the child support guidelines. *See id.* at 269. These activities and items are typical child expenses, and there was no evidence that the expenses of these children would be significantly different than those normally incurred by other children of similar ages. While some expenses, normally based on choices made

by parents in the best interest of the child, may justify an extraordinary expense clause, or a deviation from the guidelines, the expenses in this case do not. S*ee In re Marriage of Fite,* 485 N.W.2d 662, 664–65 (Iowa 1992) (holding the child's attendance at a private school did not provide a basis for increasing the support level above the guidelines); *In re Marriage of Gordon,* 540 N.W.2d 289, 292 (Iowa Ct. App. 1995) ("[E]xpenses for clothes, school supplies and recreation activities are considered under the guidelines, and a separate support order covering such expenses is improper absent a finding that the guidelines amount would be unjust or inappropriate."). Here, because we cannot find a deviation from the guidelines was necessary to avoid injustice to a parent, we reverse the district court ruling requiring Aaron to pay these expenses in addition to his child support obligation. *See In re Marriage of McDermott*, 827 N.W.2d 671, 686 (Iowa 2013) (requiring the parties to share extracurricular expenses where support was paid under the offset method and, under the shared physical custody arrangement, each parent had an obligation to cover the children's expenses).

**Appellate Attorney Fees.**

Appellate attorney fees are awarded upon our discretion and are not a matter of right. *Okland*, 699 N.W.2d at 270. When considering whether to exercise our discretion, "we consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *McDermott*, 827 N.W.2d at 687 (quoting *Okland*, 699 N.W.2d at 270). Joanna requested $12,300.00 for her appellate attorney fees. She was obligated to defend to the physical-care decision, which was the central focus of Aaron's appeal. Still, Aaron scored a victory in the issue of the extracurricular expenses. While we conclude

Joanna is entitled to some appellate attorney fees, we are unable to determine a reasonable award without more specific details of how the fees were incurred for this appeal. Therefore, we remand the issue of appellate attorney fees to the district court to determine a reasonable award. *See, e.g.*, *In re Marriage of Dunaway*, No. 19-1988, 2020 WL 3265028, at *3 (Iowa Ct. App. June 17, 2020) (remanding issue of appellate attorney fees to district court "for development of the record and the district court's determination of [the husband's] appellate attorney fee award, if any"); *In re Marriage of Pleggenkuhle*, No. 19-0030, 2020 WL 376552, at *3 (Iowa Ct. App. Jan. 23, 2020) (deciding the wife was entitled to appellate attorney fees but remanding to the district court to determine a reasonable fee award since she did not file a fee affidavit); *In re Marriage of Tribolet*, No. 18-1929, 2019 WL 4302130, at *7 (Iowa Ct. App. Sept. 11, 2019) (finding an award of appellate attorney fees was proper but remanding because the husband "has not provided an affidavit of attorney fees with documentation to support his request).

**Conclusion.**

We conclude Aaron did not preserve for review his complaints about the district court's discussion with the counselor witness. We affirm the provisions of the decree awarding physical care to Joanna and setting out the visitation schedule for Aaron. We deny Aaron's request to change the decree except that we agree he should not be ordered to pay one-half of the listed expenses of the children. Finally, we remand the issue of appellate attorney fees to the district court to determine a reasonable award.

**AFFIRMED AS MODIFIED AND REMANDED.**